HART and others *against* GRANGER:

IN ERROR.

To a petition in chancery brought by *A.* and *B.*, inhabitants of this state, against *C.*, an inhabitant of the district of *Columbia*, praying the court to order and decree that *C.* should deliver up to be cancelled a certain contract entered into between *A.* and *B.* on the one part, and *C.* on the other, for the purchase of *Western Reserve* lands in the state of *Ohio*, the terms of which contract *C.* had failed to comply with, or that he should now pay the purchase money and interest, and receive a conveyance of the same quantity of *Western Reserve* lands; *C.* pleaded in abatement, that he had previously brought his bill in chancery in the state of *Ohio* against *A.* and *B.* stating the same contract and subject of controversy, and praying the court there to order and decree that *A.* and *B.* should pay to *C.* the just value of the lands specified in the contract, after deducting the purchase money, interest and taxes, or to grant other equitable relief; whereupon process of subpoena issued, and was duly served on *A.* and *B.*, who appeared and filed their motion for the removal of the cause to the circuit court of the *United States*; this motion being over-ruled, the cause was continued to the next term, when *A.* and *B.* again appeared and demurred to the bill, assigning as one cause of demurrer that the court had not jurisdiction; which bill is now pending, and within the jurisdiction of the court. Plea in abatement held to be sufficient.

It is not a sufficient ground of abatement of a petition in chancery that the respondent was an inhabitant of another state, and was here on a transient visit only, at the time a copy of the petition and citation was left in service with him.

THIS was a petition in chancery, brought by *William Hart* and the heirs of *Samuel Mather,* jun. late of *Lyme* deceased, against *Gideon Granger,* Esq. before the superior court in *Middlesex* county, stating generally, That in the month of *August* in the year 1795, the state of *Connecticut* sold to said *Hart* and *Mather,* and divers other persons, their associates, at the price of 1,200,000 dollars, a certain tract of land, called the *Western Reserve ;* and it was agreed by the purchasers, that the proprietors should hold said land as tenants in common : That said purchasers, on or before the 5th of *September* in the same year, associated themselves together by the name of the *Connecticut Land Company :* That in said month of *September,* it was agreed by said company, that their purchase should be formed into 400 shares of 3000 dollars each, amounting to the sum of 1,200,000 ; and that each purchaser should convey his share to *John Caldwell, John Morgan* and *Jonathan Brace,* Esqrs. as trustees for said company : That, in pursuance thereof, on said 5th of *September,* each of said purchasers conveyed his portion accordingly ; and said trustees issued out to each purchaser their certificates, called *Scrip,* for his part of the trust and benefit : That *Hart* and *Mather* afterwards, in said month of *September,* received certificates to the amount of 36,923 parts of said 1,200,000 parts, the latter being the whole of said trust and benefit : That on the 11th of *September* aforesaid, *Hart* and *Mather* contracted with one *George W. Kirkland* to sell him the whole of their purchase,

in consideration of a bill of exchange drawn by him in favour of *Hart* and *Mather* on one *Henry Newman* of *Boston*, for the sum of 2719 dollars and 20½ cents, payable in 60 days from its date, and also of another bill of exchange drawn as aforesaid for the same sum, and payable in 120 days from the date, and also in consideration of *Kirkland's* promissory note then executed and delivered to *Hart* and *Mather* for the sum of 5438 dollars, and 45 cents, payable in one year from its date with interest; and as a further consideration for said purchase, *Kirkland* then entered into a covenant with *Hart* and *Mather*, that on the 2nd of *September* 1797, he would secure to them by good and sufficient personal security to their satisfaction in *New-York* or *Boston*, 36,923 dollars, to be paid at *Hartford* in the state of *Connecticut* on the 2nd of *September* in the year 1800, to *Hart* and *Mather*, with interest annually after the date of such security : That *Hart* and *Mather*, in consideration of the premises, agreed that on receipt of said security for 36,923 dollars, they would assign to *Kirkland*, in the form prescribed by the *Connecticut Land Company*, certificates of the shares of land sold by the state of *Connecticut* called the *Connecticut Western Reserve* amounting to 36,923 twelve hundred thousandths : That it was further agreed by the parties, that in case *Kirkland* should fail to procure and make the security for said 36,923 dollars at the time and in the manner specified by the agreement, *Hart* and *Mather* should be altogether released from their contract to assign said certificates, but that notwithstanding they should be entitled to the money specified in the bills of exchange and promissory note.

The petition further stated, that *Kirkland*, on the 25th of *April* 1796, sold, assigned and delivered said contract to *Oliver Phelps*, lately deceased, and to *Gideon Granger* then of *Suffield* in the state of *Connecticut*, but when said petition was brought was called *Gideon Granger* of the city of *Washington* in the district of *Columbia*; and that on the 8th of *August* 1797, said *Phelps* sold, assigned and delivered all his right and title to said contract to said *Granger*: That after the last mentioned assignment, and previous to the 2nd of *September* 1797, it was agreed by and between *Hart* and *Mather* and *Granger*, that the dwelling house of Mrs. *Gray* in *Boston* should be the place where the parties to said contract should fulfil their respective engagements to each other

*New-Haven,*
November,
1814.

Hart
and others
*v.*
Granger.

New-Haven,
November,
1814.

Hart
and others
v.
Granger.

in virtue of that contract to be performed on said 2nd day of September: That *Hart* and *Mather* on said 2nd day of *September*, and at the uttermost convenient time of the day, were ready at the dwelling house of Mrs. *Gray* to perform their part of said contract which was to be performed on said day, on receiving from *Kirkland*, or from *Granger* his assignee, the security before mentioned, and on so receiving it then and there offered and tendered so to perform their part of said contract; but that neither *Kirkland*, nor *Granger*, nor any one in their behalf, appeared at said time and place to make said security, nor was any one there to offer and tender the same, nor was the same offered or tendered.

The petition further stated, that said lands since said 2nd day of *September* 1797, have by said *Land Company*, of which *Granger* was one, been aparted and set out to each proprietor in severalty; and that *Hart* and the other petitioners, the heirs and representatives of *Mather*, hold their respective shares in the same in severalty, and own a far greater quantity than was contracted to be conveyed as aforesaid.

Under these circumstances, the petitioners complain, that though *Kirkland* and *Granger* his assignee, entirely neglected to perform their part of said contract as above set forth, yet *Granger*, since the decease of *Mather*, which took place in the month of *March* 1809, threatens to harrass and vex the petitioners with suits at law and in equity on said contract, and most unjustly refuses to deliver up the same to the petitioners; that it is of the utmost importance that the estate of *Mather* should be settled; and that the petitioners are in hazard of being deprived of testimony by the death of witnesses. For these reasons the petitioners pray the court to take their case into consideration, and to order and decree, that *Granger* deliver up to them said contract; or that he pay the petitioners said 36,923 dollars, together with the interest thereon, as well as the sum of 5000 dollars, the same being the amount of taxes and expenses on said land paid by the petitioners and the interest thereon, and in consideration thereof that he be compelled to receive from the petitioners said quantity of land so to be conveyed as aforesaid from the said several lands aparted to the petitioners as aforesaid; or that relief may be granted in some other way.

An attested copy of the petition and citation was left in

New-Haven,
November,
1814.

Hart
and others
v.
Granger.

service by a proper officer with the respondent at *Suffield* in this state more than twelve days before the session of said superior court.

To the petition above stated, the respondent (now defendant in error) pleaded, in the first place, that said petition ought to abate and be dismissed, because long before, and at the date and service thereof, he was, and now is, an inhabitant of the city of *Washington* in the district of *Columbia*, and not an inhabitant of the state of *Connecticut*; and that at the time when said petition was served, he was in the state of *Connecticut* on a transient visit with an intent to return to said city of *Washington* his residence, to which place he long since has returned, and where he has ever since resided; and therefore, that the court had no jurisdiction of the cause.

Secondly, that the petition was insufficient to entitle the petitioners to the relief prayed for.

And thirdly, that it ought to abate inasmuch as long before the date and service of the petition, the respondent filed his bill in chancery against the petitioners before the court of common pleas holden at *Warren* in the county of *Trumbull* and state of *Ohio*, on the fourth *Monday* in *June* 1811, embracing the same contract and subject of controversy as mentioned in the petition, on which process of *subpœna* issued, and was duly served on the petitioners, who appeared in said cause, and answered to said bill, and the same is now pending before said court, and within the jurisdiction of the same. The plea then sets out the bill, and the proceedings thereon. The bill sets out the contract made by *Hart* and *Mather* with *Kirkland*, and the assignment of the same by *Kirkland* to *Oliver Phelps* and *Granger*, as stated in the petition here, as well as the consideration paid and contracted to be paid to *Hart* and *Mather*; but states further, that on the 2nd of *September* 1797, *Granger* tendered to *Hart* and *Mather* security for said sum of 36,923 dollars, payable on the 1st of *September* 1800, in every particular such as *Kirkland* by his contract with *Hart* and *Mather* engaged to deliver them, except that the sums of money therein specified were through ignorance and mistake made payable to *Hart* and *Mather* personally, whereas they ought to have been payable at *Hartford*. *Hart* and *Mather* refused on this ground to accept the security offered; and informed *Granger* that

New-Haven,
November,
1814.

Hart
and others
v.
Granger.

they were released from a performance of their part of said contract, and refused to perform the same ; though they had received payment of the bills of exchange and the promissory note before mentioned, the latter having been paid by *Granger*.

The bill further states, that *Granger*, since said 2nd day of *September*, had offered to deliver *Hart* and *Mather* precisely such security payable at *Hartford* as by said contract was to have been given, but that they utterly refused to accept the same. Various other matters contained in the bill it is unnecessary to detail. It may, however, be proper to state, that the bill applies to *Hart* to disclose on oath many negotiations and transactions relative to the bills of exchange, &c., and prays for an injunction against committing waste on the land the subject matter of the contract. It ought to be stated also, that the bill as set forth in the plea, states the purchase of the *Western Reserve*, the holding of the lands as tenants in common, and the subsequent partition of the same, as appears by the petition brought here. It then states, that by means of such partition said contract cannot be specifically performed ; and prays generally, that the court, as said lands are within their jurisdiction, would order and decree that the respondents in the bill, the petitioners here, should pay to the complainant, the present defendant in error, the just value of 92,307½ acres (the same being the whole tract purchased by *Hart* and *Mather*,) after deducting said sum of 36,928 dollars, and the taxes paid on said land, together with the interest of the same from the 2d of *September* 1799 ; or that the court would grant such other relief as by the rules of equity the complainant is entitled to.

It appears further, that a subpœna was issued by said court of common pleas to summon in the respondents, the present plaintiffs in error, to appear before the next court of common pleas to be held at *Warren* in the county of *Trumbull*, on the 4th *Monday* of *November* 1811 ; and the respondents having been summoned, appeared before said court, and by consent the cause was continued to the term of the same court held on the 4th *Monday* of *March* 1812 ; at which court the respondents appeared, and filed their written motion, stating to said court that they all dwelt and resided out of the state of *Ohio*, where said court was held, and

*New-Haven,*
November,
1814.
Hart
and others
*v.*
Granger.

where said land lay ; and prayed that said cause might be removed to the circuit court of the *United States* within and for that district. This motion was not granted ; and the cause was ordered to be continued to the next term ; but previous to the continuance the respondents demurred to the petition, and assigned for causes of demurrer, that said court had not jurisdiction of the cause, inasmuch as it appeared by the bill and in fact was the case, that none of the parties to the bill were inhabitants, citizens, or dwellers in the state of *Ohio,* and there was no prayer for any specific performance of a contract for land in that state, nor was there any thing alleged in the bill to give said court jurisdiction of the cause ; besides this, the contract which was the foundation of the suit was made out of the state of *Ohio.*

To the plea in abatement above stated the petitioners demurred. There was then a joinder in demurrer.

The superior court adjudged said plea in abatement to be sufficient, and gave judgment in favour of the respondent. To reverse this judgment the present writ of error is brought.

The case was elaborately argued by *N. Smith* and *Gould* for the plaintiffs in error, and by *Hosmer* and *Granger* for the defendant in error.

For the plaintiffs in error it was insisted,

1. That if the party be within the local jurisdiction of the court, and has personal notice, he is bound to obey the order of the court. It is of no moment where his domicil is. Nor does it make any difference whether the suit be a petition in chancery or an action at law ; nor whether the process be by summons or attachment. *Anon.* 1 *Atk.* 19. *Penn* v. Lord *Baltimore,* 1 *Ves.* 454. 1 *Fonb. Eq.* 31. 2 *Pow. Cont.* 8, 9. 2 *Swift's Syst.* 189. In *Buchanan* v. *Rucker,* 9 *East* 192. and *Kilburn* v. *Woodworth,* 5 *Johns. Rep.* 37. it was admitted, that if the party had been personally served with process, he would have been bound by the judgment.

2. That the petition is sufficient. But if it were not, advantage could not be taken of the insufficiency under this plea. You cannot plead to the jurisdiction by a demurrer to the bill ; for a demurrer is always in bar, and goes to the merits of the case. *Roberdeau* v. *Rous & ux.,* 1 *Atk.* 544.

*New-Haven,*
November,
1814.

Hart
and others
*v.*
Granger.

It is manifestly absurd to call upon the court to decide upon the merits of the application while you deny their jurisdiction.

3. That this petition ought not to abate by reason of the pendency of the suit in *Ohio.* In order that the pendency of one suit may be a ground of abating another, it must be a suit between the same parties standing in the same relation, regarding the same subject matter, and before a court that has jurisdiction. First, the parties are not the same in the same relation, the plaintiffs here being respondents in *Ohio,* and the respondent here being plaintiff in *Ohio.* Secondly, the subject matters of the two suits respectively and the objects sought by them are different. As our petition embraces several matters which are contained in the bill in *Ohio,* the former may perhaps be considered as a cross-bill ; but this is no ground of abatement. Thirdly, the court in *Ohio* has no jurisdiction. All the parties are without its local jurisdiction. It is the *res* only that is claimed to give jurisdiction. But the plaintiff in that bill does not pray for *the land.* His bill is not for a specific performance. This court certainly cannot judicially know that the court in *Ohio* has jurisdiction. The record does not shew that essential fact. Further, the suit pleaded in abatement is pending in a *foreign* court ; and the pendency of a suit in a foreign court, though by the same plaintiff against the same defendant, and for the same cause of action, is no stay to a new suit brought here. *Maule* v. *Murray, 7 Term Rep.* 470. *Bowne & al.* v. *Joy,* 9 *Johns. Rep.* 221.

For the defendant in error it was contended,

1. That the petition was properly dismissed, because the superior court had not jurisdiction. They had not jurisdiction of the lands, for they lie in *Ohio ;* nor of the contract, for though made in *Connecticut,* it was to be performed in *Massachusetts ;*(a) nor over the person of the defendant, for he belonged to a different sovereignty ; he was not even a *resident* here, but *transiently* in this state. A resident is something less than a citizen, and something more than a traveller, or a person transiently in a sovereignty. The lat-

(a) To shew that the *lex loci* is that where the contract is to be *performed,* the following authorities were referred to : *Thorne* v. *Watkins,* 2 *Ves.* 35. *Robinson* v. *Bland,* 2 *Burr.* 1077. *Nichols* v. *Cosset,* 1 *Root* 294.

ter is amenable to the laws of that sovereignty for crimes only. *Ld. Kaimes* 543.

2. The petition brought in this state is insufficient. The petitioners aver, that security was not offered; that they are without relief at law; and pray that the respondent may be compelled to give up the contract. If they had relief at law, their bill was rightfully dismissed; and by their own shewing it is clear that they had. First, because *Granger* held as assignee, and they could non-suit him, or prevail against him on demurrer; as law does not recognize the assignment, nor allow him to sue. Secondly, because they were not to convey until the taxes were paid, and the security given, as a *condition precedent*; and these not being done, as they aver, they were not bound to convey. No suit at law can be sustained against them. At law, therefore, they are in no danger.

But they say, that the respondent threatens to vex them with suits *in equity.* The amount of this averment is, that the petitioners fear the respondent will seek redress before a court of equity; they therefore pray a court of equity to take his papers from him, and lay him under penalties so that he cannot make his grievances known.

Another ground relied upon by the petitioners for sustaining their bill, is, that they fear by lapse of time they may be deprived of the testimony of material witnesses. The principal facts set forth in the petition are matters of record, or under signature and seal, and require not the testimony of witnesses. The only fact averred which requires proof that may be destroyed by time, is the petitioners' *readiness to perform.* Now this readiness could be nothing more than *willingness;* a mere operation of the mind, to which neither angels nor men can safely testify. The furtherest they could go would be to prove facts indicative of this disposition of mind.

But the petitioners' readiness, if it existed, was immaterial; since, as they aver, the security was not offered; for surely, without offer of security, neither *Kirkland* nor *Granger* could claim of them the lands or damages.

In chancery this readiness is as unimportant as at law. If chancery decrees the forfeiture of the 24,000 dollars paid, the basis of her decree will be the *neglect* of the respondent, not the readiness of the petitioners. If chancery applies

New-Haven,
November,
1814.

Hart
and others
*v.*
Granger.

*New-Haven,*
November,
1814.

Hart
and others
*v.*
Granger.

her known maxims and rules to the case, then readiness on the day is no reason why the contract, on a *subsequent* day, should not be carried into effect; nor why the plaintiff in *Ohio* should not now have relief.

Though a case might exist in which a dispute arose from an attempt or offer to perform, in which they might want witnesses; yet that is not the case before the court. This case is one where the petitioners charge a perfect and entire failure. It is one of *absolute neglect;* not one of contested sufficiency, or insufficiency, in an attempt to perform.

But if the petitioners really had material testimony which may be lost by time, still the superior court were not authorized to give the relief prayed for, or to perpetuate the facts. First, because the petitioners do not specifically state the facts which their witnesses will testify, that the court may judge of their relevancy or importance. Secondly, because they do not name these witnesses, that the court may judge of their competency. Thirdly, because they do not state the ages and infirmities of their witnesses, that the court may judge of the hazard of losing their testimony. Fourthly, because the statute, and the rules of chancery, allow them to take the testimony *in perpetuam rei memoriam.* Fifthly, because by the rules of chancery, the danger, if real, of losing testimony, does not authorize a party to come into court, and claim relief; it only empowers the party to perpetuate the knowledge of facts.

The petitioners aver, that they have more acres of *Western Reserve* land than by the contract they were to convey to *Kirkland;* and they offer, if the court think it right, on the receipt of the 36,923 dollars, and compound interest from the 2nd of *September* 1797, and 5000 dollars for taxes, to convey this land. To this we answer, first, they do not state, that they have the lands drawn for the 36,923 twelve hundred thousandths. Nor secondly, that they have lands from soil and situation equal in value to the lands drawn for these 36,923 twelve hundred thousandths, or equal to the average of lands in the purchase. Nor thirdly, do they offer to convey the same lands; or lands of equal value; or lands in value equal to the general purchase. They offer only as many acres; but they may not be of one half the value of the lands drawn, or of average lands. Their petition does not describe a single tract. Of the 92,307½ acres mentioned,

*New-Haven,*
November,
1814.

Hart
and others
*v.*
Granger.

not one acre is pointed out. No foundation is laid for a decree.

There is one further consideration, which in chancery must be conclusive against the petitioners. It is this. It is a maxim in equity, that " he who asks equity must do equity." If they want their contract annulled, they must offer to restore to the respondent what he has advanced on the contract: to place him in as good a situation as though the contract never had existed. From the record it is apparent that they have received nearly 24,000 dollars. They now apply for what they call equity; and to sustain themselves in the enjoyment of this sum, they violate every maxim of equity, and rely on arguments unknown to equity, which can only be addressed to a court of law. They ask to be relieved from an evil; and at the same time ask the court to inflict as a forfeiture a dead loss of 24,000 dollars on the respondent. This is not equity. She hates forfeitures and penalties. Instead of sanctioning them, she invariably vacates and destroys them.

3. The plea of the pendency of the bill in *Ohio* was a full answer to the petitioners' bill, and the superior court were bound to dismiss their bill. At any rate, they had a *discretion,* and that discretion was exercised in a way which evinces their wisdom and regard for justice. They were bound to respect the proceedings of the court of *Ohio. Burroughs* v. *Jamineau, Mos.* 1. 2 *Eq. Ca. Abr.* 476. *Beak* v. *Tyrrell, Carth.* 31.

The constitution of the *United States* ordains, that full faith and credit shall be given to the judicial proceedings of other states; and the law explains this by declaring it shall be the same credit that is given to the records of other courts in the same state. Now, a court of chancery sitting at *Litchfield* would never command a party in *Connecticut* before a court of chancery at *New-London* to desist from asking relief, and to give up the evidence of his claim.

We contend that the pendency of the bill in *Ohio* was a sufficient answer, because it was between the same parties, and for the same subject matter. *Mitf.* 133. 182. 183. 1 *Harr.* 345. *Foster* v. *Vassal,* 3 *Atk.* 587. *Morgan* v. ——, 1 *Atk.* 408. 1 *Eq. Ca. Abr.* 38. 39. *pl.* 12. 14. It is a good plea to a bill in *Ireland* that the same controversy is pending before the chancery in *England. Arguendo, Arglasse* v.

*New-Haven,*
November,
1814.

Hart
and others
*v.*
Granger.

*Muschamp,* 1 *Vern.* 76. So it is a good plea that another court has jurisdiction ; and if this appears on the record, the defendant may demur. Besides, chancery will not hold plea in a cause arising under a different jurisdiction. *Jennet* v. *Bishopp,* 1 *Vern.* 184. It has no power over the lands at *St. Christophers,* or any where out of her jurisdiction. *Roberdeau* v. *Rous,* 1 *Atk.* 544.

The objection to our plea that the court in *Ohio* had not jurisdiction, is without foundation. The jurisdiction of courts is founded, first, upon their authority and controul over the *property* within the sovereignty under which they act ; secondly, upon their authority over the *persons of the defendants* belonging to or resident within that sovereignty. As the court of King's Bench claims a general correcting power over persons and law proceedings throughout the realm ; so chancery claims to possess a power of equal extent over the property and consciences of men. *Earl of Kildare* v. *Eustace & al.* 1 *Vern.* 419. Though neither of the parties are residents in *Ohio,* yet the property, which is the subject of controversy, is there ; the question ought to be settled by her laws ; and her courts are the only constitutional expositors of her laws. In an anonymous case, 1 *Atk.* 19. the chancellor decreed to a lady at *Dantzick* against her husband in *Prussia,* an allowance out of stock in *England* belonging to her, for her and her children's maintenance. The Grand Session of *Wales* sequestered the lands lying in their jurisdiction of a person residing at *London,* because he did not answer to a bill before them. 6 *Com. Dig.* 508. So the chancellor of *Virginia* held plea of a bill brought by *Swann* of *France* against *Wolcott* of *Connecticut.* So the chancellor of *New-York* held plea of the bill *Tallmadge* and others of *Connecticut* against *Ogden* of *New-Jersey ;* and of *Morriss* of *Pennsylvania* against *Phelps* and *Gorham* of *New-England.* See also *Manwaring* v. *Harris,* 2 *Root* 456.

Finally, there is no solidity in the objection, that the plaintiff in *Ohio* does not ask for a specific performance ; for he asks an injunction which no other court can effectually grant and secure, and the moment a decree comes it is a lien on the land. Besides, it is a novel doctrine that the form of the prayer gives the jurisdiction. A general prayer is always good.

INGERSOLL, J. [after stating the principal facts.] As to the first matter alleged in the plea in abatement, to wit, that the service of the petition was void, inasmuch as the respondent, now defendant in error, was not an inhabitant of this state, and was but transiently in it, when the copy was left with him, I am clearly of opinion that it is unavailable. There is no difference as to the validity of such service, between suits at law and in chancery. As to suits at law, one mode of service is to leave a copy of the writ at the defendant's usual place of abode, which by statute is good in every case where the defendant, at the time of service, belongs to this state. Another mode of service is to read the writ in the hearing of the defendant ; and this, if done by a proper officer, or by one properly authorized, is good service in all cases, as well where the defendant does not belong to this state as in those where he does belong to it. This is called personal service, and by the statute is good notice of the suit.

Originally, the General Assembly exercised all chancery jurisdiction ; and it was enacted, that all petitions returnable to that forum should be served by leaving a copy of the petition with the respondent, or at his usual place of abode. When chancery jurisdiction was given to the superior and county courts, the same powers were given to these courts in all equity cases coming under their cognizance as had been exercised by the General Assembly in cases of the like kind. Petitions have uniformly been served in the same manner as those were which were returnable to the General Assembly. And never has there been a distinction as to service on the person of the defendant, whether he did or did not belong to the state. In an action at law, the writ must be read in the hearing of the defendant : In a petition in chancery, a copy must be left with him. In *all* cases this kind of service is good. When I speak of actions at law, I mean those in which the defendant is summoned only to answer to the suit.

I am of opinion also, that there is enough stated in the petition to warrant the interposition of the court. At any rate, I am not prepared to say, that a court of chancery can give no relief in such a case as is presented in the petition.

As to the third matter alleged by way of abatement, to wit, the bill in chancery, filed by the defendant in error

New-Haven,
November,
1814.

Hart
and others
*v.*
Gnanger.

Hart
and others
*v.*
Granger.

against the plaintiffs, in the court of common pleas in the state of *Ohio*, and the proceedings thereon, and the operation of the same on the petition, there may be more of a question. On the one side, it has been argued, that this bill in chancery before the court in *Ohio* would have no operation on the petition at all : In the first place, because it appeared that neither the plaintiff nor the defendants were inhabitants of the state of *Ohio*, at the date of the bill and the service of the *subpœnas*, and at the time of plea pleaded ; that though the lands, the subject of the controversy, lay within the jurisdiction of the courts of *Ohio*, yet there was no prayer in the bill for a specific performance of the contract set forth in it, nor for any part of the lands, but for a recompense in money ; that of course, the whole of the proceedings before the court were *coram non judice :* But secondly, supposing for argument's sake, that these proceedings were not *coram non judice*, but were before a court of competent jurisdiction, yet that no advantage could be taken of this statement of the case by a plea in abatement ; that in contracts containing mutual covenants there may be claims on each side, and consequently, that mutual suits may be sustained for enforcing such claims ; that one suit is never pleadable in abatement of another except where a plaintiff harasses a defendant with two suits for the same cause, matter and thing ; that it is pleadable only by a defendant where two suits for the same thing are brought against him, not where he has first brought a suit on a contract, and the plaintiff afterwards brings a suit on the same contract.

On the other side it was said, that the proceedings were not *coram non judice*, inasmuch as there was in the bill a general prayer for relief, and under this general prayer a decree might be made vesting these lands, or a part of them, in the defendant in error ; and whether the court could give relief in the precise mode specifically prayed for, was totally out of the question. Further, it was said, that though in some instances actions on a contract might be pending in favour of both parties, each against the other, at the same time, yet that this was not an universal rule : That in all cases where one action or suit will settle the rights of the parties, two are not sustainable ; and that the case under consideration is of this latter kind ; and if so, a former suit

or bill is pleadable in abatement of a second on the ground of its being brought for the same matter, cause and thing.

*New-Haven,* November, 1814.

Hart and others *v* Granger.

Upon the best consideration I have been able to give to the question, I am of opinion that the proceedings before the court in *Ohio* are not *coram non judice.* It appears by the record, that that court has jurisdiction in chancery suits; consequently, if there are proper parties before it, or rather if the plaintiff in that suit has a right to call the defendants before the court to answer his claim, and they are *properly* called, all the proceedings are as regular as if they had been before a court of chancery in this state. It matters not, I apprehend, as to the point of jurisdiction, whether or not a court of chancery can, *beyond all question*, give relief in the case stated in the bill. It is sufficient if application be made to such court for relief; or, at any rate, if plausible grounds for relief are so stated. The present case no doubt is a proper one to be brought before a court of chancery; and unless relief can be obtained in such court, it can be obtained no where. If there had been in the bill a prayer for a specific execution of the contract, by conveyance of the land, or any part of the land, this of itself would have given jurisdiction to the court, whether the parties lived out of the state of *Ohio*, or in it. This is a fixed principle in chancery, and has been fully adopted in this state. Indeed, by a statute law of this state(*a*) all actions to try the title of land, or wherein the title of land is concerned, must be brought to a court in the county where the land lies. Nor is it necessary in cases of this kind that a court of chancery should have had authority to send any process of notification to the place or places where the defendant or defendants dwell. It will suffice to give them reasonable notice of the suit; such notice as the court shall direct. True it is, the courts of chancery in this state are authorized by statute(*b*) to give such notice to defendants being out of the state as they shall think proper. But I imagine this statute was passed *ex abundanti cautelâ*, and went upon the ground that the court had jurisdiction of the cause by means of the subject matter of the controversy (the land for instance) being within the limits of this state. This appeared to be an agreed principle in the argument of the cause, as the only objection made to the jurisdiction of the court was, that there was in the bill no specific prayer

(*a*) *Tit.* 6. *c.* 1. *s.* 6.　　　(*b*) *Tit.* 42. *c.* 30.

Hart
and others
*v.*
Granger.

respecting the land, but that it was merely for a sum of money, which of itself would not give jurisdiction, circumstanced as the parties were. But this objection will vanish, if it be an established principle, that under the general prayer to give such relief as is proper a specific execution of the contract as to the land can be decreed. And that this is an established principle, is a matter so plain, and occurs, and is acknowledged, so often, in daily practice, that I shall adduce no arguments to prove it.

But supposing for argument's sake, that this principle is not so well established, yet, as has been observed, the case presented by the bill is properly a chancery case, apart from the circumstance of there being no specific relief prayed as to the land. The plaintiff in the bill says, he tendered to *Hart* and *Mather* performance of his part of a contract made by *Kirkland* his assignor, on the very day, and in the very place, designated by the contract for the performance of it; and that what he did was a literal performance of his part of the contract, except that the securities tendered were not made payable in *Hartford;* and that they were not so made payable was owing to his ignorance of the obligation he was under so to make them payable. He says further, that *Hart* and *Mather* availing themselves of this circumstance, refused, after the day, to receive securities from him, all made perfectly right, and to make an assignment of the *scrip* according to the terms of the contract, but chose rather to pocket the money they had received from him and his assignor as part of the consideration. Under these circumstances, he prays for relief. This, I say, is a proper case for the exercise of chancery jurisdiction, and whether or not a decree can be made respecting the land, yet if the court can adjudicate between the parties, the bill cannot be thrown out on the ground of being *coram non judice.* This, I think, is clear. The question then is, even supposing it necessary to give the defendants legal notice of the suit, whether the parties are so before the court, and the cause is of such a kind, as that this particular court can take cognizance of it.— There can be no difficulty about the *cause,* even going on the most narrow ground, inasmuch as the contract has reference to property within the jurisdiction of the court. It follows then of course, if the court can get hold of the defendants (if I may use the expression); that is to say, if the

New-Haven,
November,
1814.

Hart
and others
v.
Granger.

defandants are so within the jurisdiction of the court as that they can be *commanded* in the subpœna to appear and answer to the bill, and if they are so commanded ; that the proceedings are not *coram non judice.* These principles being correct, if the subpœnas had been served on the defendants in the state of *Ohio,* the parties would have been properly before the court ; or, at any rate, every thing requisite would have been done to give the court jurisdiction.

But it may be said, that the subpœnas in the present case were served on the defendants out of the jurisdiction of the court, and were inoperative as to giving it jurisdiction, inasmuch as the defendants could not be commanded to appear and answer to the bill ; that in fact they have never been legally notified of the suit. How the case would have been, (going on the ground that legal service of the subpœnas was necessary) if the defendants had taken no notice of the subpœnas, and never had gone before the court, it is unimportant to say, provided it appears by the record, as I think it does, that they have actually appeared, and have thereby given the court jurisdiction, as far as it was competent for them to do it.

I agree most fully, where the court has not on any ground jurisdiction of the cause, that no consent of parties will validate the proceedings. As for instance, no consent of parties can give a justice of the peace jurisdiction to try the title of land in an action of ejectment brought before him. No action to try the title of land lying in *Hartford* can by consent of parties be brought before a court in the county of *New-Haven.* But when the want of jurisdiction arises from want of notice to the defendant, by not serving the writ a sufficient number of days before the court, or from any other defect of service, this defect may be cured, and jurisdiction given, by the defendant's waiving every objection to the service of the writ, and voluntarily appearing before the court, and answering to the suit.

Before I apply these principles more particularly to the case under consideration it may be expedient to observe, in order to enforce the position that personal service of the subpœnas in the state of *Ohio* would have given the court jurisdiction, that the practice in this state is exactly conformable to this idea. It is the universal practice in this state, and may be said to be the common law of the state,

*New-Haven,*
November,
1814.

Hart
and others
*v*
Granger.

to sustain jurisdiction of a cause where both parties belong out of the state, provided the defendant can be caught and service can be made on him here.

A few words more now with respect to the appearance of the defendants. The record shews, that they went before the court, and filed their motion for the removal of the cause to the circuit court, not at all objecting to the jurisdiction on the ground of a want of legal notice. This step of the defendants would alone, in my opinion, validate all the proceedings. But further, the record shows, that on this motion being over-ruled, there was a continuance of the cause. At the next court a demurrer is taken to the bill; and, to be sure, one cause of demurrer assigned is, that the court had not jurisdiction. It will be observed, however, that no exception is taken to the jurisdiction for want of legal notice.

This exception to the jurisdiction, if the proper ground had been assigned, I think comes too late; and besides, is improperly pleaded. A plea to the jurisdiction must be the first plea, and must be mixed with nothing else. Clear I am, therefore, that the proceedings in the court in *Ohio* are not *coram non judice.*

As to the operation of the proceedings, going on the ground that they are regular, and that the court in *Ohio* has jurisdiction of the cause, I had some doubt before the argument was closed. I was doubtful whether any other advantage could be taken of those proceedings than by moving for a continuance of the petition on which this writ of error is brought till a trial could be had of the bill in chancery in the state of *Ohio.* But on the whole, I have come to this conclusion, and with little or no doubt now remaining, that the plea in abatement grounded on the aforesaid proceedings, was well put in, and that the judgment of the court below on the same was right. I will not say, if the bill had been filed by the defendant in error before the court in *Middlesex* county, that the plea would have been available. Perhaps the petition in such case might have been considered as a cross-bill, and both petition and bill have been tried together. Whenever both processes are before the same court, there is no danger of injustice being done, or of hardship taking place, by trying the last process in point of time, first. Cases there may be indeed, where processes in favour of both parties may and ought to subsist at the same time. All cases of

mutual covenants, where one covenant is the consideration of the other, are of this sort. So also are actions of book-debt, where a balance is claimed by both parties. A defendant in an action of book-debt may not only claim a balance to be due to him, but may want to secure it by attachment. For this purpose, it is competent for him to bring an action pending the plaintiff's suit. In short, whenever the determination of the plaintiff's suit will not put an end to the controversy, the defendant may bring an action on the same contract. But, as a general principle, if the determination of the suit first commenced will determine the whole controversy, the first is pleadable in abatement of the last; at any rate, it is so, if the suits be not in the same court. I know not, indeed, that it would make any difference at law, if they were both in the same court. It rather strikes me, that in chancery, as the court could easily try them both together, and settle at once all the controversies between the parties, the suits would stand on the ground of bill and cross-bill. But if the suits be before different courts, one court would have no controul over the proceedings of the other, and unless a plea in abatement were allowed, as above stated, manifest injustice might be done, by trying the last suit brought, first. This would be inequitable, inasmuch as the plaintiff who first brings a suit gains, and ought to gain, a priority thereby; and when the rights of the parties can be settled in this suit, he ought not to be harassed with a suit before another court in favour of the defendant.

Again, to test the principle that in such a case the first bill ought to abate the second, let us see what operation a *judgment* on the first suit would have on the second. If a judgment on the first bill would settle all the rights of the parties, it could unquestionably be pleaded in bar of the second, and would be available to bar all proceedings on it. This proposition certainly is very clear, and needs no argument to prove the truth of it. It seems to me, then, to follow conclusively, that a first process undetermined would abate a second.

It remains now but to consider whether a determination of the suit before the court in the state of *Ohio*, let it be either way, would not be conclusive as to every thing contained in the petition of the plaintiffs in error. The general ground stated for bringing the petition is, that the defendant in error will not bring a suit against them to try the question whether

*New-Haven*, November, 1814.

Hart and others
*v*
Granger.

Hart
and others
*v*
Granger.

they are liable to him on the contract; and notwithstanding this, that he will not give it up to be cancelled. But the fact is, he had, at the very time, brought his suit to enforce the contract; and therefore, on this ground there could be no need of bringing the petition. They go on further to pray the court to order the defendant in error to deliver up to them the contract to be cancelled without any thing being done on their part, or if it should be supposed that in equity they are still holden on it, to give such relief as the case should require, and on such terms as the court should think proper. The drift of the petition, therefore, is, for the court to determine whether it is in any sense binding on them; and if so, in what manner, and on what terms, it shall be performed. This is the ground stated in the petition for the court to proceed upon; and it as clear to me as any proposition that can be stated, that a decision on the bill of the defendant in error will take away this and every other ground on which the petition can stand. If the court in *Ohio* should grant relief to the defendant in error on his bill, this would be conclusive as to any redress the plaintiffs in error could have on the contract. They could not have it delivered up to them to be cancelled, nor could the court below give any relief, or prescribe any terms for giving relief to either of the parties. Such a decision on the bill would end the controversy. If, however, the determination should be against the defendant in error; in such case, the plaintiffs would obtain exactly what they wish. This judgment would protect them from all future suits on the contract, and there would be no need of its being delivered up.

In every point of view, the case must be with the defendant in error; and I think the judgment ought to be affirmed.

In this opinion SWIFT, TRUMBULL, BRAINARD and BALDWIN, Js. severally concurred.

REEVE, Ch. J. and SMITH, J. dissented.

EDMOND, J. also dissented, and assigned his reasons in substance as follows.

On the sufficiency of the petition it appears to me there can be but one opinion.

The plea in abatement to the jurisdiction of the court rests

on the ground, that the respondent was a citizen of *Washington*, and only passing through this state at the time he was summoned.

*New-Haven,*
November,
1814.

Hart
and others
*v.*
Granger.

If the person is within the local jurisdiction of the court at the time of the summons, and personally served, it is sufficient to give jurisdiction to the court. Strangers while here are under the protection of our laws, and owe a local obedience. When summoned, and the process returned to the court, and entered in the docket, the jurisdiction of the court attaches in the same manner it would attach by a like personal service in the case of a citizen of this state.

It was contended, that a court of chancery will not hold jurisdiction and pass a decree where it must *of necessity* be nugatory and unavailing ; that should the respondent go out of the state before a decree is passed, the decree would be defeated.

To this it may be answered, in every instance where the process is by summons, the defendant or respondent, before judgment rendered or decree passed, may withdraw his person and effects, so as to render a judgment or decree inoperative ; but because this is possible, the bare possibility that the judgment or decree cannot be carried into effect is not a sufficient reason for dismissing the action or petition from the court.

Should a foreigner contract a debt in *Connecticut ;* for example, purchase a horse to carry him on his journey, and refuse to pay, the creditor at his election may summon or attach ; should he adopt the former mode, it would be a singular plea on the part of the defendant, to say, the action ought to abate and be dismissed, because he has it in his power to render nugatory any judgment that may be rendered.

The possibility or probability of the applicant failing to derive benefit from his process, is not the criterion by which the court are to be governed. If indeed it can be shewn to the court, that by any event anterior to the plea of abatement pleaded, any judgment or decree of the court that could be rendered or passed, must of *necessity in all events* be nugatory, the court will dismiss the application ; but that is not the case here. The objection only amounts to this : I can by leaving the state forever escape the effect of your decree.

New-Haven,
November,
1814.

Hart
and others
v.
Granger.

The pendency of another petition in *Ohio* is also urged as a ground for abating the present petition.

Where the petitioners are the same, the respondents the same, and standing in the same relation, and the prayer of the petition is for the same thing, before a court of competent jurisdiction, it is but reasonable that the prior should abate the latter; because in such case the latter is vexatious. But that is not precisely this case. The prayer of the petition in *Ohio* is general, " that what pertains to justice may be done." If by this prayer we are to understand that the remedy sought is against the person, there is a manifest want of jurisdiction in that court. The respondents in that petition, or either of them, never were in *Ohio* to be served with the petition, and in that way give jurisdiction. If then the court in *Ohio* have jurisdiction at all in the case, it is on the ground that specific relief is sought, and that the proceeding is to act *in rem*. It was stated in the argument, and so appears from the record, that the respondents in that petition, before plea or answer, prayed a removal into the circuit court of the *United States*, which was denied; and that a demurrer was then taken to the jurisdiction. If so, the question whether the petition in *Ohio* is such as to give to that court competent jurisdiction remains yet to be decided there; and the opinion of this court on that point cannot vary their decision. If then we abate the petition before us, on the ground of the petition pending in *Ohio*, and the court there should dismiss that petition, or it should be withdrawn, the petitioners in this court will be turned off without remedy, and driven probably to seek redress in some other state. Under these circumstances, as this court is not furnished with evidence (for a recital of the petition in the plea is not proof) that a petition is pending before a court of competent jurisdiction in *Ohio* between the same parties, and the matters offered in the plea in bar appear to me insufficient, and it can produce no conflict of jurisdictions, or argue any want of comity to that court, I think it would be correct to sustain the present petition, until the fate of the petition in *Ohio* is decided by that court. Should the petition there be sustained, and a decree passed embracing all the objects properly sought by the present petition, on proper proof of those facts, it will be time enough to say, that any decree passed by this court would be nugatory.

On the whole, I am satisfied, that the petition here is suffi-cient; that the superior court had jurisdiction; and that the petition in *Ohio*, with the proceedings there had, furnished no sufficient ground for abatement or bar; and that the judgment of the superior court was erroneous.

Judgment affirmed