## Ex Parte PETER D. HEDLEY.

EMBEZZLEMENT.—The crime of embezzlement is a purely statutory offense.

EMBEZZLEMENT BY AGENT. — In order to convict one charged with having, as agent, embezzled the money of his principal, four propositions are to be made out: First, that he was agent; second, that he received money belonging to his principal; third, that he received it in the course of his employment; fourth, that he converted it to his own use with intent to steal the same.

EMBEZZLEMENT BY- AGENT DRAWING ON PRINCIPAL.— An agent can commit the

Argument for Petitioner.

crime of embezzlement by drawing a draft on his principal, payable to a third person, the same as though he received the money in person, if the principal pays the draft.

EMBEZZLEMENT BY AGENT ACTING BEYOND HIS ·AUTHORITY.—If an agent obtains the money of his principal in the capacity of agent, but still in a manner in which he was not authorized by his agency to receive it, and converts the same to his own use with intent to steal or embezzle it, it is money received " in the course of his employment" as agent.

EMBEZZLEMENT BY AGENT OF AN EXPRESS COMPANY.—If an agent of an express company, who is authorized to draw telegraphic checks, as agent, on his principal, for money to be used in the principal's business, but not to draw individual checks, draws such checks, as agent, for money to be used in his private business, and the principal pays the money to the drawee, it amounts to a receipt of the money of the principal by the agent "in the course of his employment," as that phrase is used in the Act defining the crime of embezzlement.

COMMISSION OF CRIME IN THE STATE BY ONE LIVING OUT OF IT.—An agent residing out of this State, of a principal who lives in this State, commits the crime of embezzlement in this State if he draws telegraphic checks, in the course of his agency, on his principal, and converts the money to his own use, with intent to embezzle the same.

MISTAKE IN STATUTE.—Where there is an evident mistake in the use of a word in a section of a statute, and it is apparent what was the word intended, it will be read as though the intended word was inserted.

THE petitioner applied to be discharged on habeas corpus. On the 21st day of September, 1866, he was held to answer for the crime of embezzlement, by the Police Judge of the City and County of San Francisco. The evidence showed that while acting as the agent of Wells, Fargo & Co. at Gold Hill, State of Nevada, he drew checks, as agent, on his employers at San Francisco, and by means thereof obtained money to a large amount, which he had his broker apply to the purchase of mining stock at San Francisco. He sustained losses in his mining speculations, and did not return the money to Wells, Fargo & Co.

The other facts are stated in the opinion of the Court.

*Quint & Hardy*, and *Alexander Campbell*, for Petitioner, on the point that the money was not received by Hedley in the course of his employment, cited *Rex* v. *Thorley*, R. & M. C. C. R. 343 ; *Rex* v. *Hautin*, 7 C. & P. 281 ; Arch. Crim. Pr. & Pl. 452, 454 ; 3 Arch. 449 ; *Mowry* v. *Walsh*, 8 Cow. 238 ; and *Lewis* v. *The Commonwealth*, 15 Sergt. & Rawle, 93.

*H. & C. McAllister*, upon the same point *contra* cited *Rex* v. *Beechy*, Russ & Ry. C. C. 318; *Rex* v. *Williams*, 6 Carr & P. 626; *Lowenthal* v. *The State*, 32 Alabama, 589; *People* v. *Dalton*, 15 Wend. 581; *People* v. *Sherman*, 10 Wend. 298; 2 Bishop's Crim. Law, Sec. 349.

By the Court, SHAFTER, J.:

The petitioner is held to answer a charge of embezzlement. The offense is alleged to have been committed in this State, in the City and County of San Francisco. The facts, as they appear by the papers, are substantially as follows:

In 1863 the petitioner became the agent of Wells, Fargo & Co. at Gold Hill, Storey County, Nevada, which agency continued down to and during the month of May, 1866. While Hedley was such agent he drew telegraphic checks upon his principals at San Francisco in favor of his broker, William Burling, of that city. The checks were signed by Hedley, as agent of Wells, Fargo & Co., and also contained the private check word used by that firm as a further and secret means of indicating that the telegraphic checks were the genuine drafts of the Gold Hill agent.

At the time these telegraphic checks were so drawn, Hedley had no private funds of his own and no individual account with Wells, Fargo & Co., and he was in nowise entitled or authorized to check upon the San Francisco house, except by virtue of his agency, and his individual check would not have been honored.

The checks in question, were paid by Wells, Fargo & Co. at San Francisco, to Burling solely because they were subscribed by Hedley as agent, and contained the private check word aforesaid, and every other mark of a genuine agency check. Hedley was fully authorized, as agent at Gold Hill, to draw such telegraphic checks as those in question without limit as to amount, and it was according to the usual course of business between Hedley as agent and the San Francisco

house, for him to draw, and for Wells, Fargo & Co. to pay, such telegraphic drafts.

The principal ground upon which it is claimed that the prisoner should be discharged is, that he has been committed without reasonable or probable cause. (Wood's Dig. 476, Sec. 7.)

Embezzlement is a purely statutory offense, and is defined to be " the fraudulent appropriation of such property as the statute makes the subject of embezzlement, under the circumstances in the statute pointed out, by the person embezzling, to the injury of the owner thereof." (Bishop Crim. Law, Sec. 330.) This definition does no more than declare that embezzlement is what the statute has made it to be, referring us to the Act to ascertain the elements of the offense and the conditions under which alone its commission is made possible.

The California Act relating to embezzlements is as follows : " If any clerk, apprentice, servant or agent to whom any money or goods or chattels or property shall be intrusted by his master or employer or principal, or who shall receive any money or property belonging to his master, employer or principal, in the course of his employment, service or agency, shall withdraw himself from his master, employer or principal and go away with the said money, goods, chattels or property or any part thereof, with the intent to steal the same and defraud his master, employer or principal thereof, contrary to the trust or confidence in him reposed by his said master, employer, or principal ; or, being in the service of his said master, employer, or principal, shall embezzle the said money, goods, chattels, or property, or any part thereof, or otherwise shall convert the same to his own use, with like purpose to steal the same, every such person so offending shall be punished in the manner prescribed by law for feloniously stealing property of the value of the articles so taken, embezzled, or converted." (Hittell's Dig., Sec. 1,470.)

*Agent receiving money in the course of his employment.*

It will be seen that there are four distinct propositions of

fact to be made out in order to establish the guilt of the petitioner under this section. First, that he was the agent of Wells, Fargo & Co. Second, that he received money belonging to them. Third, that he received it in the course of his employment. And fourth, that he converted the money to his own use with intent to steal or embezzle it.

That the relation of principal and agent existed between the prisoner and Wells, Fargo & Co. is not disputed; and it is apparent that the money received by Burling was received, in legal effect, by Hedley, Burling's employer. In that particular the case stands as it would if Hedley had received the money in person. But it is claimed that on the facts, Hedley did not receive the money in the course of his employment, but directly contrary to the course of it. The proposition for which the petitioner contends is not unsupported by authority. The leading case on that side is *Rex* v. *Snowley*, 4 C. & P. 390. The prisoner was hired to lead a stallion round the country, during the season, and he was to charge for each mare thirty shillings, and not to take less than twenty shillings. It was proved that he had received six shillings, the whole charge made for covering one mare, and had not accounted for the money. Held that there was no embezzlement of the six shillings, inasmuch as it was his *duty* to take no sum less than twenty shillings, and therefore the six shillings were not received by the prisoner in the course of his employment. This case is followed by *Rex* v. *Thorley*, R. & M. C. C. R. 343; *Rex* v. *Hautin*, 7 C. & P. 281.

But there are other English cases which state the rule differently. In *Rex* v. *Beechy*, 1 British C. C. 318, a clerk intrusted to receive money *at home* from out-door *collectors*, received it *abroad* from out-door *customers*. Held that such a receipt of money might be considered "by virtue of his employment," though beyond the limits to which the accused was authorized to receive money for his employers. In *Rex* v. *Williams*, 6 C. & P. 626, the prosecutor stated that he "never employed or authorized the prisoner to receive money from any persons who were regular customers, and that the

persons from whom he received the sums in question were of that description." It was considered that the proof was sufficient to sustain the allegation that the money was received for and on account of his master.

The doctrine of *Rex* v. *Snowley* has failed to secure the learned sanction of Bishop, one of the most distinguished American writers upon the subject of criminal law. He argues " that in reason whenever a man claims to be a servant while getting into his possession by force of this *claim* the property to be embezzled, he should be held to be such on his trial for the embezzlement. Why should not the rule of estoppel known throughout the entire civil department of our jurisprudence apply in the criminal ? If it is applied here then it settles the question ; for by it, when a man has received a thing of another under a claim of agency, he cannot turn round and tell the principal asking for the thing, ' Sir, I was not your agent in taking it, but a deceiver and a scoundrel.' " (Bishop Crim. Law, Sec. 367, 3d ed.)

The provision of our statute that the money or other thing embezzled must have been received by the servant " in the course of his employment " at least comprehends a case where the act done is one which, in itself considered, the servant is authorized to perform ; and much more would the act be comprehended by the provision, if it were performed according to the course of a special method prescribed by the employer for the guidance of the servant in doing it. In this case, Hedley was authorized to receive money on account of his employers, and as already remarked, the money that Burling received of them at San Francisco was received in legal effect by Hedley who stood behind him. The act in its essential quality was not foreign to Hedley's powers but was manifestly within them. The method, too, whereby a receipt of the money by Hedley, through Burling, was accomplished, was the very method hit upon by Wells, Fargo & Co. for effecting such transfers ; so that, as it appears to us, Hedley received the money in a double sense " in the course of his

employment." When the money was so received by Hedley, it became and was money of Wells, Fargo & Co.'s in his hands. Though his employers did not pay to him in trust, consciously, yet he received the money, nevertheless, conscious of the fact that it did not belong to him but to them; and he held it as matter of law, subject to the confidence reposed in him at the commencement of his service. No point is made upon the sufficiency of the evidence tending to prove that the petitioner " converted the money to his own use with intent to steal the same."

### Person committing crime in this State who lives out of it.

The objection that the offense was not committed in this State, and that therefore our Courts have no jurisdiction, cannot be maintained. The offense, though commenced without this State, was consummated within it, and the offender having been found in the State and arrested therein, is clearly amenable to its criminal justice. (*People* v. *Adams*, 3 Denio, 190; *Adams* v. *The People*, 1 Conn. 173.) " Where the commission of a public offense commenced without the State is consummated within the boundaries thereof, the defendant shall be liable to punishment in this State though he were without the State at the time of the commission of the offense charged, provided he consummated the offense through the intervention of an innocent or guilty agent without this State, or any other means proceeding directly from himself; and in such case the jurisdiction shall be in the county in which the offense is consummated." (1 Hitt. Dig., Art. 1,673.)

### Statute to be read as intended.

The word " without " occurs twice in this provision, but it is apparent that in the instance in which it is used last, the word " within " was the word really intended. The provision must therefore be so read. (*People* v. *King*, 28 Cal. 256; Smith's Comm., Secs. 488, 527.)

The prayer of the petitioner must be denied, and the prisoner remanded. And it is so ordered.

Neither Mr. Justice RHODES nor Mr. Justice SANDERSON expressed any opinion.