STATE OF MISSOURI, Respondent, *v.* WILLIAM H. HEATH, Appellant.

### November 25, 1879.

1. Under a plea of *autrefois acquit* the burden of proof is upon the defendant, and he must be ready to prove the truth of his plea so far as respects the record of the former trial, or his plea will be overruled. If there is a question of fact involved, the jury should be sworn at once to try the case.

2. Under an indictment charging the defendant, county auditor, with embezzling public moneys received by him as agent and servant of St. Louis County, where the moneys thus received belonged to the school fund, and the defendant had no right, as auditor, to receive such moneys, an instruction that if the defendant received these moneys "while he actually held the dual relation to the county of auditor and agent, or auditor and servant, and it was his duty to receive them, not as auditor, but as agent or servant, it is immaterial whether he received them as auditor or agent, or as auditor or servant," is bad, as telling the jury that it was immaterial whether defendant received the money as auditor or agent; and as making it a test whether it was the duty of defendant to receive the money as auditor or as agent.

3. The instruction should have been to the effect that if defendant held towards the county the relation of agent or servant, as appointed or permitted so to act by the County Court, and in fact received the moneys, not as auditor, but as such agent, then the circumstance that he was auditor, and so acted in other matters in regard to the school loans, was immaterial.

4. The relation of agent and servant within the meaning of the statute (Wag. Stats. 459) does not depend on the legal right of the appointing power to receive the moneys, or on the legal right of the agent to collect. The relation of trust and a colorable right to employ, with the acceptance of the relation, are the essential elements.

5. The fact that defendant was county auditor does not prevent his being agent for the county to collect moneys which as auditor he could not receive.

6. The assumption of the duties of agent of the county for collecting moneys, the actual collection of the money, and the claiming and receiving wages for such services, are conclusive as to the existence of the agency and service.

APPEAL from the St. Louis Criminal Court.

*Reversed and remanded.*

H. A. CLOVER, for the appellant: The auditor had no right to.receive school moneys as auditor or in any other capacity. — *The State* v. *Moeller*, 48 Mo. 431. There was no relation of master and servant, or of principal and agent, between the county and the defendant. — Bishop's Cr. Law, sect. 333 *et seq*.

LEVERETT BELL and LEWIS B. BEACH, for the respondent: It is not necessary in a prosecution for embezzlement to prove any formal appointment of the accused as a servant or agent; it is sufficient to show that he was permitted to act as such.—2 Bishop's Cr. Law ( 6th ed. ), sect. 340. And if he assumed so to act, and received the money in that capacity, he cannot deny the relation when prosecuted for embezzling it. — 2 Bishop's Cr. Law, sect. 364; *Ex parte Hadley*, 31 Cal. 108. The indictment is good. —*The State* v. *Clarkson*, 59 Mo. 149; *The State* v. *Flint*, 62 Mo. 393. The motion to discharge the defendant because he had not been brought to trial on the indictment before the end of the third term of the court after the indictment was found, was rightly overruled. — *Ex parte Donaldson*, 44 Mo. 149.

HAYDEN, J., delivered the opinion of the court.

The defendant was tried upon an indictment charging him with embezzling public money, and convicted. The indictment contained five counts, and it was on the first and fifth of these that the defendant was convicted, the State having abandoned the others. To the indictment the defendant pleaded *autrefois acquit*, and to this plea the State filed a replication. The defendant demurred,. and the demurrer to the replication was overruled. A motion to strike out a part of the plea was sustained. The record states that then the court below, of its own motion, entered an order, which is given, and the effect of which is that the parties appearing, '' and the plea of former accquittal and the replication thereto being submitted to the court,'' and it ap-

pearing that the indictment is sufficient in law to compel the defendant to answer, the plea is overruled and the defendant ordered to plead to the indictment.

This action of the court below was excepted to, and the exception properly preserved, and the ruling of the court is now complained of as error. This plea of former acquittal appears to have been summarily disposed of, but that there was error in this disposition does not appear. Since this case was called in this court the defendant has procured an addition to the record, consisting of the plea, the State's replication, and of a subsequent plea of the defendant. But there is now nothing which enables us, even if in any view we were at liberty to do so, to pass upon the merits of the plea of former acquittal. The record of the former proceedings, which is an essential part of such plea, is not before us, nor does it appear that such record accompanied the plea or was offered in the court below; though it would appear from the plea that the first indictment was found, not at the same, but at a prior term of court. Nor does it appear that any trial was demanded, or evidence offered in support of this plea; but, on the contrary, it appears that it was submitted with the replication, both parties appearing. If this is true, and we cannot assume that the record is otherwise, it would appear that the action of the court was correct. The defendant who pleads former acquittal or conviction has the burden of proof thrown upon him. *The State* v. *Andrews*, 27 Mo. 267. The record is a part of his plea; and he must be ready to prove on the spot the truth of his plea, so far as respects the record of the former trial, otherwise the plea is properly overruled. *The Commonwealth* v. *Strother*, 1 Va. Cas. 186, 232. If there is a question of fact involved, the jury are sworn at once to try the case, there being no occasion for delay upon such a plea, which can consist only of a record and facts which, if true, can readily be established.

Whether the matters stated in the replication are true, we have no means of knowing; but if it were permissible for this court, in the absence of any evidence as to the former proceedings, to consider the matter on the plea and replication, the conclusion would be that the plea constituted no defence. The counts which charged conversion of moneys received by the defendant as auditor are not in question, since the counts which correspond, in the present indictment to those counts, being the first, second, third, and fifth of the first indictment, were discontinued before arraignment on the trial below. The fourth count in the first indictment, which corresponds to the first and fifth counts of the present — on which the defendant was tried in the court below, — was bad on its face, and upon it the defendant could not have been legally convicted on any evidence whatever. This being the case, the defendant was never in jeopardy, and his plea of former acquittal could not have availed him. *Colman* v. *Tennessee*, 97 U. S. 521; 1 Archb. Cr. Pr. & & Pl. (Pomeroy's ed.) *112; 1 Whart. Cr. Law, sect. 589.

It is apparent that of the charge of embezzling public moneys received by him as agent and servant of St. Louis County the defendant was never acquitted, except by reason of a defective indictment. The defendant, indeed, set up in his plea that during all times covered by the former and present indictment he was merely auditor of St. Louis County, and not an agent or servant as charged. But, under pretence of a plea of former acquittal, this, it is apparent, is a plea of not guilty to the two counts of the present indictment in which he is so charged. In fact the defendant, by his subsequent plea of January 18, 1879, did plead not guilty to these two counts, and applied his plea of former acquittal where it belonged — to the other counts for embezzling money charged to have been received by him as auditor. But, as stated, the State discontinued and the defendant was discharged as to the other counts, leaving the first and fifth now to be considered.

The substance of the first count is, that the defendant was appointed by the County Court to be servant and agent of the county of St. Louis to receive for safe-keeping and transfer into the county treasury certain school-moneys; that by virtue of his agency and service he received, as such agent and servant, school moneys to the amount of $143,-000, which he fraudulently converted to his own use. The other count charges that the defendant was, at his request, permitted to act and become the agent and servant of the county, etc., and then follows the first.

The section of the statutes under which the defendant was indicted is as follows (Wag. Stats. 459, sect. 41; Laws 1870, p. 29):—

"If any officer appointed or elected by virtue of the Constitution of this State, or any law thereof, including as well all officers, agents, and servants of incorporated cities and towns as of the State and counties thereof, shall convert to his own use in any way whatever; or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public moneys, or any valuable security by him received for safe-keeping, disbursement, transfer, or for any other purpose, or which may be in his possession, or over which he may have supervision, care, or control, by virtue of his office, agency, or service, every such officer, agent, or servant shall, upon conviction, be punished by imprisonment in the penitentiary not less than five years."

The fact of the embezzlement of the school moneys by the defendant was proved beyond dispute. The question is, how and in what capacity were the moneys received? The defendant contends he received them merely as auditor of the county, and in no sense as agent or servant of the county, and consequently is not liable on the indictment. It appears that he was auditor, and as such had, from 1867 to June, 1876, charge of the bonds and mortgages given to secure the money loans of the schools, the securi-

ties being kept in his office, where the register of loans and
other books showing the condition of the township funds
were kept.   Before 1871, school moneys, whether principal
or interest, were paid directly into the county treasury, but
from 1871 to the end of defendant's term, the debtors paid
the moneys into the auditor's office, taking receipts or cer-
tificates of payment from the auditor, upon which the
County Court would act in satisfying mortgages.   The law
did not impose upon the auditor the duty of receiving these
payments on school loans, and payments should have been
made by the borrowers into the county treasury.   In 1867
the defendant asked the County Court for compensation for
attending to this school business, in addition to the salary
which by law he received as auditor, and an order of court
was made that he receive compensation at the rate of $1,200
a year "for attending to duties imposed by law in attending
to matters appertaining to county schools," and accordingly
that sum was thereafter annually paid to him.   In July,
1872, as the defendant proved, the county counsellor gave
to the county an opinion to the effect that the county audi-
tor in St. Louis County, and not the county treasurer, was
the proper officer to whom payments of moneys on account
of school loans should be made.

The   office of auditor of St. Louis County was created
and its duties are defined by act of March 14, 1859.   Laws
1859, p. 448.   See also Laws 1863, p. 158.   The super-
vision and management of the school funds are vested by
law in the County Courts of the respective counties.   Rev.
Stats. 1855, chap. 143, art. 2; Gen. Stats. 1865, chap. 46;
Acts 1870, p. 155.   By sect. 39 of this last act it is provided
that the duties which devolve upon county clerks under
that act shall in St. Louis County devolve upon the auditor.
But sect. 95 of chap. 46 of the General Statutes of 1865,
which is identical with sect. 81 of the act of 1870, was by
the Supreme Court, in *The State ex rel.* v. *Moeller*, 48 Mo.
331, construed to mean that the county clerk had no au-

thority to receive general school-moneys, such as are here in question, the county treasurer being the proper officer for that purpose.

Following this decision, the court below instructed the jury that as county auditor the defendant " was not authorized by law to receive the moneys in question ; that is to say, by virtue of his office as such, solely, he had not the legal right to receive them." The court further instructed that if the defendant received these moneys " simply and only as auditor, and he did not at the time also hold to the county, with respect to these moneys, the official relation either of agent or servant, he cannot be convicted under this indictment. But if he received them while he actually held the dual official relation to the county of auditor and agent, or auditor and servant, and it was his duty to receive them, not as auditor, but as agent or servant, it is immaterial whether he received them as auditor or agent, or as auditor or servant, for the law will not in such a case have such a distinction."

The defendant complains that these instructions were erroneous, and also that they are unsupported by evidence.

The relation of agent and servant within the meaning of the section of the statute under which the present counts of the indictment were drawn, does not depend on the legal right of the appointing power to receive the money converted, or upon the legal right of the agent to collect it. The relation of trust and confidence between the alleged principal and agent, and a colorable right to appoint or employ the agent or servant, with the acceptance by the latter of the relation, are the essential elements. Nor does difference in language of our statute render the English decisions inapplicable in this particular. In Hastie's case, where the prisoner, indicted as servant of a society, received money which by the rules he was not authorized to receive, and which it was not his duty to receive, Earl, C. J., said : " Whether or not he received the money by virtue

of his employment would turn on the course of business. If the trustees directed him to receive it, it is clear that he was employed by them as a clerk or servant, and received it by virtue of his employment." It was held that from the actual course of business the jury might infer that the prisoner was employed to receive the money by the trustees. *Regina* v. *Hastie*, Leigh & C. 269 ; *Rex* v. *Abey*, 19 L. J. (N. S.) 149. It is sufficient under our statute, and so the words clearly import, if the money is received by the defendant by virtue of his actual employment as agent or servant, and in discharge of a trust committed to him by the plaintiff or master.

If, indeed, no relation of trust exists between the alleged master and servant, — as where A., owing money to B., paid it to C., who was a servant of B., but not authorized by B. to receive money, though A. supposed C. had such authority, — the defendant is not liable. *Rex* v. *Hawtin*, 7 Car. & P. 281. So where money is paid by mistake to the defendant, and by him converted. *The Commonwealth* v. *Hays*, 14 Gray, 62. But where the defendant was authorized to receive money, though not the money converted, or from persons of the class who paid this money, it was held that as the money was paid to the servant of the prosecutor as such, this was sufficient to sustain the allegation that the money was received by the prisoner for and on account of his master. *Rex* v. *Williams*, 6 Car. & P. 626. See also *Ex parte Hedley*, 31 Cal. 108. The cases of which these are examples show that it is the actual, not the legal authority — the relation of the master and servant or principal and agent as existing in fact, and as inferable from acts done and from the course of business — that are the essential features of the statutory relation.

Nor does the fact that our statute has the words, " If any officer appointed or elected by virtue of the Constitution of this State, or any law thereof," distinguish this section from the English statute 39 Geo. III., c. 85, so far as to

necessitate a formal appointment. If, as in the case at bar, the employment was created by a body acting under color of right, and the agency or service was accepted, the appointment need not have been formal or legally correct. The words above quoted are interpreted by the clauses immediately following. Under the English statute just referred to, it is held that if a person is employed, though he is not appointed as required by law, the actual and permissive employment is sufficient. *Rex* v. *Beacall*, 1 Car. & P. 457. See also *Rex* v. *Rees*, 6 Car. & P. 606.

Nor did the fact that the defendant was auditor prevent his being such agent or servant, or being as such guilty of the offence charged. There is nothing inconsistent in his occupying both positions ; and, under the decisions cited, there was evidence, from the defendant's own acts and the course of business between him and the County Court, from which it might fairly be inferred that he was the agent and servant of the county, as appointed or permitted to act by the County Court, and as such received and collected these school-funds. The County Court probably selected the defendant because he was auditor ; but the facts that he applied for and received compensation additional to the salary which was by law his pay for all he did as auditor — his explanation being that this extra compensation was for his services in handling these school-funds — are facts of such significance as greatly to outweigh the mere formal facts, such as that he signed receipts as auditor. The character of the defendant's employment obviously depends more on the facts surrounding its inception than on what occurred long subsequently ; and the mere conclusions of witnesses to the effect that the defendant received the money as auditor are of no value.

The view formerly taken that a person could not be convicted of embezzlement as a servant of a given person if at the time the accused was employed by another, is now exploded. If the principal or master has control over the agent or ser-

vant in relation to the matter of the service, the fact that the agent or servant is employed by others, and for different purposes, does not destroy the relation as existing between the accused and the prosecutor. *Regina* v. *Tite*, 8 Cox C. C. 458 ; *Regina* v. *Bailey*, 12 Cox C. C. 56. In *Regina* v. *Tite*, Williams, J., said : "The case of *Regina* v. *Batty* ( 2 Moo. C. C. 257) not only decided that the prisoner was not the less a servant because he was employed by other persons at the same time, but that the employment for wages made him a servant." In the section of our statute quoted, the words " agents and servants of incorporated cities," etc., are as comprehensive as if the words " or employed by " were inserted after the word " of."

Applying the principles enunciated, the instructions given by the court below were correct up to the words, " But if he received them while he actually held the dual official relation," etc. It was error to tell the jury that it was immaterial whether the defendant received the moneys as auditor or agent, or as auditor or servant, or to make it a test and submit to the jury the question whether it was the duty of the defendant to receive the moneys as auditor, or agent or servant. The instruction at this point should have been to the effect that if the defendant held towards the county the relation of agent or servant, as appointed or permitted so to act by the County Court, and in fact received the moneys not as auditor, but as such agent or servant, then the circumstance that he was auditor, and so acted in other matters in relation to the school loans, was immaterial.

The following instruction, we think, was correct : —

" If the defendant assumed to act, and was by the county court permitted to act, as the agent or servant of the county for the purpose of receiving and collecting, for safe-keeping and transfer into the county treasury, the moneys mentioned in the indictment ; and if he did so act, and as such received and collected said money, and for so doing

he claimed and was paid compensation out of the public moneys of the county, he cannot now be heard to deny his agency or service with respect to such moneys so received by him.''

It is claimed by the State that the instruction just quoted is correct, for the reasons given by Mr. Bishop in his work upon Criminal Law (6th ed., vol. 2, sect. 364). See also *Ex parte Hedley*, 31 Cal. 108. But it is not necessary to invoke the doctrine of estoppel in order to sustain this instruction, which merely applies a rule that is sanctioned by cases already cited. The actual assumption of duties covering the particular acts in question, the doing of such acts while employed in the line of duty, and the claiming and receiving wages for such duties, may well be regarded as conclusive legal proof of the existence of the service charged in the indictment.

The objection of the State was properly sustained to the question put to one of the judges of the County Court, whether the defendant was at a given time acting as agent or servant of that court, or otherwise than as county auditor ; as also to the question what the extra compensation was paid for. The mere conclusions of the witnesses should have been uniformly excluded. The receipts of the defendant were properly admitted in evidence against him.

The motion to discharge the defendant because he was not brought to trial on the indictment before the end of the third term after the indictment was found, was properly overruled. What was said in the case of *The State* v. *Nugent*, recently decided, is applicable to this motion here.

We have examined the instructions offered by the defendant, but find no error in the refusal of any of them. This examination, and what has been said in regard to points raised as to the admission of evidence, are matters to which attention has been given with a view to a new trial in the court below. For errors in the giving of instructions, the judgment must be reversed and the cause remanded. All the judges concur.