# CRIMINAL COURT OF BALTIMORE CITY.

Filed October 11, 1898.

STATE OF MARYLAND
VS.
JAMES F. McSHANE.

*Henry Duffy* for State.

*Thomas G. Hayes* for defendant.

STOCKBRIDGE, J.—

James F. McShane, formerly Commissioner of Health and Register of Vital Statistics of the Mayor and City Council of Baltimore, is indicted for the crime of embezzlement. The indictment contains five counts, and the traverser has demurred to each of those counts.

The first and second counts are drawn under Section 75 of Article 27 of the Code of Public General Laws, and the third, fourth and fifth counts under Section 80 of the same article.

By its express terms Section 80 is restricted to cases of embezzlement by persons holding official position in either the State or some of the public corporations within the limits of the State, such as the City of Baltimore or the County Commissioners of a county, while Section 75 is far broader in its scope, and, under it, an indictment may be found against one embezzling from an individual, firm or body corporate, even where such body corporate is a public corporation. Now, while Section 80 relates to the crime of embezzlement by public officials, its terms are not sufficiently broad to include all public officials; it is restricted to a certain well and clearly defined class of officials; namely, those who "are by law bound to pay over, account for and deliver to the Treasurer of this State, or to any other person by law authorized to receive the same," the money, funds or evidences of debt which have come to his hands as the property of the body corporate of which he is an official. Unless, therefore, at the time of this embezzlement, James F. McShane was by law bound to pay over, account for and deliver to the Treasurer of this State, or any other person by law authorized to receive the same, the funds of the Mayor and City Council of Baltimore which might come to his hands, he is clearly not indictable under the provisions of Section 80. The designation of the position held by Dr. McShane appears in each of the last three counts of the indictment; that is, the third, fourth and fifth. There can be no doubt or question, therefore, that unless the Commissioner of Health and Register of Vital Statistics of the City of Baltimore was by law bound to pay over, account for and deliver to the Treasurer of the State, or some other person authorized by law to receive it, the money in his hands, the demurrer to each of these counts must be sustained. It is conceded that there is

nothing in either the general or local statutes which require the Commissioner of Health of Baltimore to pay over, account for or deliver money to anyone; but it is urged upon the part of the State that the words "by law," as used in Section 80, must be construed to include ordinances of the Mayor and City Council, and that by the terms of certain sections of Article 11 of the City Code it was incumbent upon the Health Commissioner to so account for, pay over and deliver funds that might come to his hands to either the Comptroller or the Register of the city. For the present purposes it is unnecessary to pass upon the question whether the words "by law," as used in Section 60, include ordinances as well as Acts even if it were conceded that the position of the State in this respect is correct an examination of those sections would fail to show any such requirements of accounting for or the payment over of money received by a Commissioner of Health as would gratify the requirements of Section 80, and therefore it seems perfectly clear upon the principles laid down in State against Denton, 74 Md., 517, that James F. McShane was not such an official as was contemplated by or intended to be embraced within the provisions of that section, and therefore the demurrer to each of the third, fourth and fifth counts must be sustained. Entertaining this view, it, of course, becomes unnecessary to pass upon certain technical objections which were made by counsel for the traverser to these several counts.

By the first count Dr. McShane is indicted for the embezzlement of money as being the agent of the incorporation, and the second count differs from the first in that there is added to the fact of the agency the name of the position held by him. For the purposes of the demurrer the Court can look only at the indictment, and, though a bill of particulars has been demanded by the traverser and filed by the State, yet that cannot be made to constitute any part of the indictment, and the sole question upon the demurrer as to these counts is whether upon their face they disclose any such condition as would render them bad, and as has been said in the case of the State against Denton, supra, the very facts and reasons which remove Dr. McShane from the class of officials indictable under Section 80 would make him indictable under Section 75. There is no technical element lacking in the averments of either of these counts. The addition in the second count of the name of the position held by the traverser cannot affect it—it is descriptive matter only—it does not disclose any character of duties which relieve him from liability to indictment under Section 75, and each of the first and second counts contain all the necessary averments for a case of embezzlement. The indictment as to these two counts must be held good and the demurrer to each of these counts overruled.

After the finding of the indictment the traverser demanded, as was his right, a bill of particulars, and a somewhat voluminous one was furnished by the State's Attorney. To this bill of particulars the traverser has filed exceptions upon the ground, as indicated in the case of the State against Jules, 85 Md., 305, that the items set out in the bill of particulars are inadmissible to be given in testimony in support of the averments of the indictment. The question is not whether the proof of these facts alone would afford sufficient ground for a conviction, but it is whether they are admissible at all. While there are several of these exceptions, they all depend upon two, or possibly three, questions; was or not the money alleged to have been embezzled the property of the Mayor and City Council of Baltimore, and did a fiduciary relation subsist between the Mayor and City Council of Baltimore and James F. McShane at the time when the alleged embezzlements were committed; that is, was he an independent official or was he an agent of the city, and as subsidiary to this, if he was an agent of the city, was he such an agent, possessed of such powers that the receipt of money by him, or for him in the name of the city, would constitute the crime of embezzlement under Section 75 of Article 27.

Upon the facts stated the question presented is not whether the money in question could have been recovered in a suit by the city against the parties who paid it to Dr. McShane, but whether when they parted with it to him it became the property of the city. It was strenuously argued that there was an inhibition upon the city from receiving this money, and that there-

fore the money could not be or become the property of the city, but this contention *does not appear* well founded. The city is nowhere in express. terms forbidden to receive such money; the sole provision is an ordinance directing how insane patients who are confined in certain institutions at the expense of the city shall be paid for, and there is not one word as to the source from which the money which the city pays for them shall be derived, whether from direct taxes, license fees or some other source. It is a principle of law too well established to need the citation of authorities that a municipal corporation is perfectly competent to accept and receive gifts or devises, or in many cases grants of land, either for its general purposes or for specific purposes, such as charitable, and if, as seems to have been the case in this instance, there was a bargain of some sort between Dr. McShane, on behalf of the city, upon the one side, and the relatives and friends of certain of these insane patients on the other, under and as the result of which the several sums set out in the bill of particulars were paid, even though such agreements were in excess of his authority and could not have been enforced at law, nevertheless when the money was paid it became the property of this city. And this proposition is amply supported by authority.

State vs. B. & O. R. R. Co., 34 Md., 363.

Commonwealth vs. Smith, 129 Mass., 111.

Denton vs. State, 77 Md., 530.

Nor is it possible to conclude that Dr. McShane, while filling the position of Health Commissioner, was an independent official. The position was one created only by ordinance, its duties were prescribed by ordinance, and he was removable at pleasure of the Mayor, in pursuance of the power vested in the Mayor by an ordinance. The position was totally different from that of a Police Commissioner, who, though exercising his powers and performing his duties within the city, is selected by the Legislature and is beyond the control of the Mayor and City Council, or even from that of the City Register, who, though chosen by the City Council, is not removable as city officials are. A Health Commissioner, under such circumstances, cannot be regarded

as an independent official, but is merely the agent of the city, and therefore standing in a fiduciary relation to the city. But it is argued that even if he was the agent of the city, his was but a limited agency and he had no authority to do any act other than those which might be prescribed for him by ordinance of the Mayor and City Council; that in the receipt of the moneys set out in the bill of particulars he was acting outside of the powers of his agency, and that as to the receipt of these moneys there was no fiduciary relations and he cannot be held responsible under the criminal law for acts thus done, and the cases of Regina vs. Coley, 16 Cox C. C. 226, and Moore vs. State, 74 N. W. Rep. 320, are relied upon in support of this contention. With respect to the last of these cases, it is to be observed that the statute of Nebraska which was under consideration by the Court was much more restricted than ours and by its terms was applicable only to officials who were *charged with the collection of moneys*, and its analogy, therefore, would be to an indictment under Section 80. The English cases upon this point are not in entire harmony, and a different rule from that laid down in Reg. vs. Coley was followed in the cases of Rex vs. Beacall, 1 C. & P., 454; Rex vs. Hall, 1 Moody's C. C., 474; Rex vs. Jenson 1 Moody's C. C., 434; Reg. vs. Foulkes, L. R. C. C., 150; Reg. vs. Hastie, 9 Cox, 264, and Reg. vs. Tongue, 8 Cox, 336. Nor is there complete harmony in all of the American cases, but so far as this State is concerned the question seems to be fully determined in the case of Denton vs. State, 77 Md., 530, when our Court of Appeals makes use of the following language: "It is well settled that, under the terms of our statute, to constitute the crime of embezzlement it is not necessary to show that the party charged received the money by virtue of his employment, nor that he had any authority to receive it, but if it was received in the name or on account of the master or employee, then the embezzlement is within the statute." And this is fully in line with many decisions elsewhere.

Ex parte Hedley, 31 Cal., 108.

State vs. Spaulding, 34 Kan., 1.

Commonwealth vs. Smith, 129 Mass., 111.

HARLAN, J.—

In view of the public interest in and the importance of this cause, I was requested by Judge Stockbridge to sit with him at its hearing, and having done so, I desire to state that I concur in the above opinion, prepared by him to give expression to the conclusions we reached in consultation, after a separate examination of the questions involved, in the light and with the aid of the oral argument and the briefs furnished by counsel.