[Crim. No. 852.    Third Appellate District.—August 22, 1925.]

## THE PEOPLE, Appellant, v. H. N. MITCHELL, Respondent.

[1] CRIMINAL LAW—EMBEZZLEMENT—DEPOSIT OF MONEY TO PERSONAL ACCOUNT—EVIDENCE.—In this prosecution of the president of a corporation on two charges of embezzling corporate funds, in which the jury brought in a verdict of guilty on both charges, the trial court properly granted a new trial, where the case of the prosecution rested entirely upon the receipt by defendant of two certain sums of money in his trust capacity as president of the corporation and the deposit thereof in his personal bank account, and there was nothing in the record to warrant the inference that defendant secretly made such deposits or disbursements in the remodeling and repairing of the corporation's building.

[2] ID.—USE OF MONEY—INTENT—EVIDENCE.—Whether the deposit in his personal account of the sums alleged to have been embezzled by said defendant constituted the crime of embezzlement depended upon the intent with which such deposits were made, and if deposited with the intent to devote the same to his own use, defendant thereby committed the crime of embezzlement, regardless of whether he thereafter actually devoted the money to such use; and in proof of the intent with which the deposits were made, the prosecution was entitled to show all receipts by defendant of money for the corporation and the disposition and use made thereof by him.

[3] ID.—CONTENTS OF CORPORATE BOOKS—SECONDARY EVIDENCE.—In such prosecution, if the books of the corporation which the defendant had delivered to the accountant to be audited were not available, the prosecution had the right, upon laying a proper foundation, to prove their contents by the testimony of the accountant.

[4] ID.—DEPOSIT OF MONEYS TO PERSONAL ACCOUNT—VIOLATION OF PERMIT—ERRONEOUS INSTRUCTION.—In such prosecution, on motion for a new trial, the trial court properly held that the whole evidence taken together was insufficient to justify a conviction, and that it was error to instruct the jury that if defendant received and deposited to his personal account certain checks given in payment for corporate stock, instead of depositing the same with a depositary as directed by the commissioner of corporations, and that defendant "afterward paid out such money for purposes not

1.    See 10 Cal. Jur. 264.
2.    See 8 Cal. Jur. 140.

allowed or authorized in a sum exceeding 20% of the total amount received for the sale of the stock of the corporation, so that the money was lost to the corporation, then I charge you that such acts constituted embezzlement upon his part, and you should find him guilty as charged."

[5] ID.—FRAUDULENT APPROPRIATION—ERRONEOUS INSTRUCTION—CONVICTION OF DIFFERENT CRIME.—In a prosecution for embezzlement, an instruction in which the necessary element of fraudulent appropriation is entirely omitted, is erroneous; and a defendant cannot be convicted of a crime with which he is not charged.

[6] ID. — MISCONDUCT OF DISTRICT ATTORNEY — DISAGREEMENT WITH COURT'S STATEMENT OF LAW.—However strongly a district attorney may believe that the court is in error as to the law, he should refrain from the use of any language which might incline jurors to accept his statement of the law rather than that of the court.

[7] ID.—EXCEPTIONS TO INSTRUCTIONS—DISCREDIT OF COURT.—In view of the express provision of section 1176 of the Penal Code that written instructions and those taken down by the reporter "need not be excepted to," the practice of noting exceptions to such instructions should not be countenanced; and while an attorney may properly call the court's attention to any error in an instruction and request its correction, this should not be done in such manner as to discredit the court's statement of the law as finally given to the jury.

---

(1) 20 C. J., p. 486, n. 60.   (2) 20 C. J., p. 426, n. 15, p. 485, n. 58.   (3) 16 C. J., p. 616, n. 87.   (4) 20 C. J., p. 486, n. 60. (5) 20 C. J., p. 491, n. 92.   (6) 16 C. J., p. 912, n. 81   (7) 16 C. J., p. 1070, n. 29.

APPEAL from an order of the Superior Court of Sacramento County granting a new trial. Claude F. Purkitt, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Appellant.

Clarence W. Morris and George E. Foote for Respondent.

FINCH, P. J.—The defendant was held under two informations, each charging him with the crime of embezzle-

---

6.   See 8 Cal. Jur. 271.
7.   See 8 Cal. Jur. 512.

ment. The cases were consolidated and tried together, resulting in convictions on both charges. The defendant moved for a new trial and his motion was granted as to both charges. This appeal is from the order granting a new trial. No brief has been filed in behalf of respondent and the cause was ordered submitted for decision upon the appellant's opening brief.

[1] The first information alleges that the defendant was president of the Modern Laundry Company, a corporation; that there came into his possession as such officer the sum of $550 "of the personal property of said Modern Laundry"; and that on the —— day of September, 1922, he "did wilfully, unlawfully, feloniously, and fraudulently appropriate said money and personal property to his own use, not in due and lawful execution of his trust." The second information, in similar language, charges the embezzlement of $325 on or about the —— day of November, 1922.

The Modern Laundry Company was incorporated March 11, 1922. The defendant was elected president thereof March 30, 1922. He was the active manager of the corporation. His authority is not shown further than may be inferred from his position in the company and his activities in its affairs. The secretary-treasurer of the company testified that the minutes do not show that the defendant was authorized "to cash checks for or on behalf of the company" or to deposit "the funds of the company in his own private account." The record is silent as to what the by-laws provide in this respect.

March 30, 1922, the state commissioner of corporations issued his permit, authorizing the company "to sell two hundred and fifty shares of its capital stock to its incorporators for cash and fourteen thousand seven hundred and fifty shares to the public for cash, subject to a selling cost not to exceed twenty per cent of the amount paid in cash account of each subscription, upon the condition that the company, on or before the first day of October, 1922, impound in a depositary to be first selected by the company and approved by the commissioner of corporations, the net sum of fifty thousand dollars, otherwise eighty per cent of each payment was to be returned to each subscriber upon his demand therefor." The company did not select a depositary until March, 1923. "Between six and eight thousand dollars"

was then deposited with the depositary so selected. This money was at a later time paid to subscribers under the order of the commissioner of corporations, they receiving, in the order of their applications therefor, eighty per cent of the respective amounts paid by them for stock, until the fund was exhausted. The fund was insufficient to reimburse all subscribers. The sums alleged to have been embezzled by defendant were received by him from two subscribers in payment for stock, and no part thereof was ever repaid to them. The evidence does not show how many shares of stock were sold or the amount of money received therefor. It appears that the defendant received all sums paid in for capital stock and that he deposited the same to his personal credit in his private bank account. The account-books of the company were kept by or under the direction of the defendant. A witness for the prosecution, who had audited the accounts of the corporation, testified that the defendant delivered to him, for the purposes of the audit, "stock certificate books and card records of the stockholders' accounts, showing amounts of the capital stock subscribed and the payments thereof, various canceled checks signed by Mitchell, receipted invoices, . . . one book that was supposed to be the cash book, . . . a record of the receipts from stock subscriptions; it was in a very crude form."

The defendant expended large sums of the money so received in remodeling and repairing a building which, as appears inferentially, was purchased by the company for use as a laundry. Neither the purchase price of the property nor the amount, if any, paid thereon appears from the evidence. Neither does it appear whether the defendant appropriated to his own use any of the funds of the company. It was admitted at the trial that two subscribers for capital stock paid the defendant for the company the sums alleged to have been embezzled and that he deposited the same to the credit of his personal account. Whether these sums were included in the amount finally turned over to the depositary does not appear. The case of the prosecution rests entirely upon the receipt by defendant of these two sums of money in his trust capacity as president of the company and his deposit thereof in his personal bank account.

In *People* v. *Royce*, 106 Cal. 173 [37 Pac. 630, 39 Pac. 524], the defendant received the money there involved in

his trust capacity as treasurer of the Veterans' Home Association and deposited the same to his personal account. He reported the receipt of the money to the bookkeeper of the association and the amount thereof was entered by the bookkeeper upon the ledger of the association. It was held that the evidence was not sufficient to sustain the charge of embezzlement. In this case, as stated, the defendant entered upon the books of the company the amounts received by him. Through a period of about ten months he paid out large sums in the remodeling and repairing of the company's building. It is not to be presumed that the other officers and directors of the company did not have knowledge of these receipts and disbursements. There is nothing in the record, therefore, to warrant the inference that the defendant secretly made the deposits and expenditures in question. The facts are not distinguishable in principle from those in the Royce case.

[2] Whether the deposit of the sums alleged to have been embezzled by the defendant constituted the crime charged depends upon the intent with which such deposits were made. If so deposited with the intent to devote the same to his own use the defendant thereby committed the crime of embezzlement, regardless of whether he thereafter actually devoted the money to such use. In proof of the intent with which the deposits were made, the prosecution was entitled to show all receipts by defendant of money for the company and the disposition and use made thereof by him. (*People* v. *Ward,* 134 Cal. 301 [66 Pac. 372]; *People* v. *Cobler,* 108 Cal. 538 [41 Pac. 401]; *People* v. *Bidleman,* 104 Cal. 608 [38 Pac. 502]; *People* v. *Lorden,* 62 Cal. App. 501 [217 Pac. 117].) [3] If the books of the company which the defendant had delivered to the accountant to be audited were not available, then the prosecution had the right, upon laying a proper foundation, to prove their contents by the testimony of the accountant. [4] The trial court properly held that "the whole evidence taken together is insufficient" to justify a conviction and that it was error to instruct the jury as follows:

"If you are convinced by the evidence in this case to a moral certainty and beyond all reasonable doubt that Mrs. Ross Burden gave her check for $325.00 for the purchase of stock of the Modern Laundry Company, and that Andrew

Glaser gave his check for $550.00 also for the purchase of stock in the Modern Laundry Company, and if you further are convinced by the evidence to a moral certainty and beyond all reasonable doubt that the permit granted by the Corporation Commissioner for the sale of the stock of said Modern Laundry Company required that not exceeding 20% of the money received for such sales could be expended for any purpose until such time as a sum equal to $50,000 was deposited with a depositary selected by the Corporation and approved by the Commissioner of Corporations; and if you further believe from the evidence to a moral certainty and beyond all reasonable doubt that the defendant, H. N. Mitchell, cashed these checks and deposited the proceeds to his own personal account in the California National Bank. That money was not deposited with a depositary selected by the corporation and approved by the Commisisoner of Corporations. That H. N. Mitchell afterward paid out such money for purposes not allowed or authorized in a sum exceeding 20% of the total amount received for the sale of the stock of the corporation, so that the money was lost to the corporation, then I charge you that such acts constituted embezzlement upon his part, and you should find him guilty as charged in each case.''

The instruction is clearly erroneous. [5] An appropriation must be fraudulent to constitute the crime of embezzlement. This essential element of the crime is entirely omitted from the instruction. The defendant was charged with the fraudulent appropriation of two specified sums of money to his own use, but the instruction states, in effect, that he may be convicted upon proof that he used, for any purpose, ''a sum exceeding 20% of the total amount received for the sale of the stock of the corporation.'' It is elementary that a defendant cannot be convicted of a crime with which he is not charged.

[6] During the progress of the trial, in the presence of the jury, the trial judge and the district attorney frequently expressed sharply conflicting opinions relative to the law applicable to the case. Counsel for defendant objected to the admission of certain evidence offered in rebuttal by the district attorney and the trial judge stated that the evidence was not competent in a criminal case. After a colloquy between the judge and the district attorney, the

latter said: "I know what competent testimony is. I have tried as many cases as your honor has tried, and, if I may add, as many cases as your honor ever will try. I know what competent testimony is and rebuttal testimony." Four times during the reading of the instructions to the jury the district attorney interrupted the court by announcing his exceptions to as many instructions which had been read, stating the grounds of his respective exceptions as follows: (a) "We contend that isn't the law. . . . I think it is an encroachment on the province of the jury with reference to the facts"; (b) "I would like to except to that instruction . . . on the ground it is not a true statement of the law"; (c) "We enter an exception to the instruction as not properly stating the law. . . . The other instruction (one requested by the district attorney and refused) has the approval of the supreme court"; (d) "We except to that instruction . . . as not being a correct construction of the law, and also an encroachment on the rights of the jury as to the facts." When the court stated, in response to one of the exceptions taken, that "the law excepts to any instruction given by the court," the district attorney replied: "I want the jury to know what instructions I except to." However strongly a district attorney may believe that the court is in error as to the law, he should refrain from the use of any language which might incline jurors to accept his statement of the law rather than that of the court. [7] Section 1176 of the Penal Code. expressly provides that written instructions and those taken down by the reporter "need not be excepted to." In view of this plain provision, the practice of noting exceptions to such instructions should not be countenanced. An attorney may properly call the court's attention to any error in an instruction and request its correction, but not in such manner as to discredit the court's statement of the law as finally given to the jury.

The order is affirmed.

Thompson, J., *pro tem.*, and Plummer, J., concurred.