## STATE, Respondent, v. JAY J. LOCKIE, Appellant.

[253 Pac. 618.]

EMBEZZLEMENT—INTENT—PROSECUTION BROUGHT UNDER PROPER STATUTE—EVIDENCE.

1. Where defendant's employer maintained a credit at bank, which was subject to defendant's check for purchase of supplies, and thus within his care and control, money received in the bank was subject to embezzlement by him, regardless of secret intent he may have entertained to steal it; there being no limitation on manner of obtaining it, if it was controlled by virtue of his employment.

2. Employee *held* properly prosecuted for embezzlement of employer's funds, under C. S., section 8455, providing that clerk, agent or servant, appropriating or secreting, with fraudulent intent, property which has come into his control or care by virtue of employment, is guilty of embezzlement, rather than under section 8451, requiring that appropriation must have been relating to property within possession or control by virtue of trust.

3. In prosecution for embezzlement by employee of employer's funds entrusted to him for purpose of purchasing supplies, permitting witness, who was assistant postmaster, to read certain book entries purporting to be records of purchases made by defendant in course of his employment, *held* proper, it not being necessary that whole book be offered in evidence, since particular entries desired were properly identified by testimony as to manner of keeping book.

4. Evidence, in prosecution for embezzlement of employer's fund by employee, *held* sufficient to warrant jury in finding that employer lost money alleged to have been embezzled.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Appellant was convicted of embezzlement. *Affirmed.*

Stephan & North, for Appellant.

In embezzlement the property comes into one's possession lawfully and the felonious intent to appropriate the property is formed after possession is gained; in larceny, possession is acquired through a trespass and the felonious intent to appropriate exists at the time possession is acquired. (C. S., secs. 8450, 8451; *Leach v. State,* 46 Tex. Cr. 507, 81 S. W. 733; *United States v. Thomas,* 69 Fed. 588; *Bivens v. State,* 6 Okl. Cr. 521, 120 Pac. 1033; *Johnson v. State,* 46 Tex. Cr. 415, 80 S. W. 621; 9 R. C. L. 1266; *People v. Edwards,* 72 Cal. App. 102, 236 Pac. 944; *People v. Wright,* 66 Cal. App. 782, 226 Pac. 952; *Doss v. People,* 158 Ill. 660, 49 Am. St. 180, 41 N. E. 1093; *Beasley v. State,* 138 Ind. 552, 46 Am. St. 418; *People v. Miller,* 169 N. Y. 339, 88 Am. St. 546–555, and notes, 62 N. E. 418; *Commonwealth v. Barry,* 124 Mass. 325; *Vought v. State,* 135 Wis. 6, 128 Am. St. 1008, 114 N. W. 518, 646.)

Where there are several sections of the embezzlement statutes the charge must be brought under the proper sec-

Publisher's Note.

2. Construction of phrase "by virtue of employment or office" in embezzlement statute, see note in 15 **Ann. Cas.** 443. See, also, 9 **R. C. L.** 1271–1273.

See Criminal Law, 16 **C. J.,** sec. 1524, p. 741, n. 38; sec. 1527, p. 743, n. 77.

Embezzlement, 20 **C. J.,** sec. 3, p. 410, n. 6; p. 411, n. 9; sec. 13, p. 424, n. 5, 6; sec. 14, p. 420, n. 81; sec. 16, p. 427, n. 24; sec. 24, p. 438, n. 80; sec. 66, p. 469, n. 38; sec. 85, p. 488, n. 71.

tion, and before a conviction can be had the state must prove that the offense of the accused comes within the section upon which the charge is based. (C. S., secs. 8451, 8453, 8455; 9 R. C. L. 1267, 1287; *State v. Matthews*, 143 Tenn. 463, 13 A. L. R. 314, 226 S. W. 203; note, 87 Am. St. 34; *Commonwealth v. Ryan*, 155 Mass. 523, 31 Am. St. 560, 30 N. E. 364, 15 L. R. A. 317; *Pullam v. State*, 78 Ala. 31, 56 Am. Rep. 21; *In re Huston*, 27 Ida. 231, 147 Pac. 1064.)

A witness is not entitled to read to the jury entries made in a book of records kept by a postoffice until the book itself has been identified and admitted in evidence. (C. S., sec. 7970; *Stolz v. Scott*, 28 Ida. 417, 154 Pac. 982.)

To be an embezzlement it must be shown that the owner of the property actually suffered a loss of the property. (*Higbee v. State*, 74 Neb. 331, 104 N. W. 748; *McAleer v. State*, 46 Neb. 116, 64 N. W. 358.)

A. H. Conner, Attorney General, and John W. Cramer and Leon M. Fisk, Assistant Attorneys General, for Respondent.

Any agent who has money in his possession, which comes into his possession by virtue of his agency, is punishable as embezzlement if he fraudulently converts it. (*Brown v. State*, 99 Tex. Cr. 441, 270 S. W. 179; *State v. Taberner*, 14 R. I. 272, 51 Am. Rep. 383; *State v. Gillaspie*, 11 Okl. Cr. 631, 150 Pac. 96; *Ex parte Hedley*, 31 Cal. 108.)

The statement that property received "by virtue of his employment" refers only to property coming into the hands of the agent for his employer is without foundation. (*Ex parte Hedley, supra; People v. Gallagher*, 100 Cal. 466, 35 Pac. 80.)

There is no variance between the crime charged and the proof so far as the statute is concerned. (C. S., secs. 8450, 8451, 8455.)

The matter of the sufficiency of the identification of exhibits rests in the discretion of the lower court. (*Stolz v. Scott*, 28 Ida. 417, 154 Pac. 982; Jones on Evidence, sec. 573;

*Bull Remedy Co. v. Clark,* 109 Minn. 396, 18 Ann. Cas. 413, 124 N. W. 20, 32 L. R. A., N. S., 519.)

BRINCK, Commissioner.—Appellant was convicted of the crime of embezzlement and appeals from the judgment.

The evidence shows that appellant was employed as a bookkeeper by the Idaho Power Company, hereinafter referred to as the company, in its Twin Falls branch office, from January 9, 1920, to July 9, 1925; that for the purpose of providing funds for the payment of current expenses of the Twin Falls office, the company maintained in the First National Bank of Twin Falls a deposit account of about $1,200, carried in the name of Charles Neeley, division manager, and called the petty cash fund; that part of appellant's duties was the purchase of office supplies, including, among other things, postage stamps and stamped envelopes, and that to pay for such purchases, he was authorized to draw checks on the bank account above mentioned, signing them in the name of Neeley by himself. It further appears that when supplies were purchased for the office, a receipt from the vendor was customarily taken for the amount of the purchase, specifying the articles purchased and their price, which receipts were then sent by the Twin Falls office to the company's home office in Boise, whereupon the amount represented by the receipts was remitted by the Boise office to the Twin Falls office, by check payable to the division manager, which check was then deposited in the petty cash fund account. The evidence for the state tended to show that appellant, during the period of his employment, had abstracted from the petty cash fund deposit account some $15,000, made up of small amounts obtained from time to time, mainly by signing checks payable to cash, drawing the money, and converting it to his own use; that in order to conceal this practice, defendant upon drawing such a check would, with a part of the money so obtained, purchase stamped envelopes and take a receipt therefor, and would then alter the receipt by writing in a larger amount and specifying a larger purchase than that actually made, and

would then deposit in his personal account, or otherwise appropriate to his own use, the balance of the money obtained upon the check. The raised receipt would be sent to the Boise office, which in turn remitted the full amount of the altered receipt for deposit in the petty cash fund account, by which means the deposit account was kept up to the desired $1,200. At times a check to make the purchase was drawn to the vendor for the amount of the purchase, and another check to cash drawn for the amount added by appellant to the receipt, which latter check appellant would not enter upon the check register kept by him.

Appellant urges that his offense, if any, is not embezzlement. It is contended that when he obtained possession of the money from the bank, it amounted to a trespass upon the owner's possession, in that, first, such possession was obtained by trick or fraud practiced upon the company by way of the altered receipts, and, second, because at the time he obtained the money he had already conceived the intention to fraudulently appropriate it, and thereby come into its possession unlawfully. Upon this idea that there was a trespass in his taking of the money, appellant contends that his crime, if any, was larceny and not embezzlement. (20 C. J. 410, 411.)

That he obtained the money by a trick, it is urged, is shown by the alleged fact that before he could obtain the money he must first alter the receipt and send it to the Boise office, and cause the amount represented thereby to be deposited in the Twin Falls bank, and then only could he appropriate the money thus deposited. In all instances that have been specifically called to our attention, the evidence shows that the appropriation of the money was concurrent in time with the alteration of the receipt representing the amount converted, and the remittance from the Boise office merely supplied the deficit which had thus arisen in the petty cash fund.

Conceding, however, either that the deception practiced by defendant induced the company to deposit its funds in the Twin Falls bank, or that defendant formed his fraudulent

intent before he cashed any check, it is not clear that he committed a trespass, or that the possession by the company of the property taken was susceptible of such trespass. But regardless of this question, if the statute under which the prosecution was had were directed only at the property in the possession of the wrongdoer, there is much authority to the effect that one who has received property ostensibly as an agent, or even as a bailee, cannot be heard to say that, by reason of his fraudulent intent, existing at the time he received the property, his taking was unlawful. (*State v. Rothrock*, 45 Nev. 214, 200 Pac. 525; *Brown v. State*, 99 Tex. Cr. 441, 270 S. W. 179; *People v. Main*, 75 Cal. App. 471, 242 Pac. 1078; 20 C. J. 424, notes 5 and 6; 2 Bishop, Criminal Law, sec. 364; and see *State v. Dawe*, 31 Ida. 796, 177 Pac. 393.) Other cases holding that the fact that the agent, prior to receiving possession, intends to convert the property, does not preclude a conviction of embezzlement, are: *State v. Gothern*, 138 Iowa, 236, 115 N. W. 890; *Wall v. State*, 2 Ala. App. 157, 56 So. 57; *Miller v. United States*, 41 App. D. C. 52; *State v. Taberner*, 14 R. I. 272, 51 Am. Rep. 383; *Ex parte Hedley*, 31 Cal. 108.

[1] But our statute is much broader in scope than those which relate merely to the possession of the servant or agent. The property which may be embezzled under the statute involved here is any property which by virtue of his employment has come into his control or care. Under such statute, it has frequently been held that the fine distinctions, which have been laid down under statutes relating only to property which is merely in the possession of such person, do not apply. (*Grin v. Shine*, 187 U. S. 181, 23 Sup. Ct. 98, 47 L. ed. 130; *In re Grin*, 112 Fed. 790, 799; *Territory v. Maxwell*, 2 N. M. 250.) The property of the company, namely, its credit with the bank, was by virtue of defendant's employment, subject to his check, and was thus within his care and control; and the money itself, when he received it from the bank, was obviously within his care and control, and by the terms of the statute was subject to embezzlement by him, regardless of any secret intent he may have entertained to

steal it. There is no limitation upon the manner in which he may have obtained it, if he controls it by virtue of his employment. (*Territory v. Maxwell*, 2 N. M. 250.)

[2] The same considerations apply in the main to defendant's next contention, which is that defendant was not informed against under the proper statute. The statute under which this prosecution was had, C. S., sec. 8455, is as follows:

"Every clerk, agent or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement."

Defendant contends the charge should have been under C. S., sec. 8451, which is as follows:

"Every officer of this state, or of any county, city or other municipal corporation or subdivision thereof, and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

Of course, the use of the word "person" as used in C. S., sec. 8455, includes a corporation. (C. S., sec. 9456.) Appellant contends that if the property is delivered to a servant by his employer, it is entrusted to him by the employer, and he holds it by virtue of his trust, under C. S., sec. 8451; and that in order to hold it by virtue of his employment, under C. S., sec. 8455, it must have come into his possession from a third person; and since technically the possession here came to defendant from a third person, the bank, it is difficult to follow appellant's reasoning on this point. But if we consider the possession here to have come from the employer and if possession in its technical sense were

synonymous with the control or care specified in C. S., sec. 8455, the idea that the distinction contended for by appellant in this respect can obtain under embezzlement statutes is based upon the line of cases developed from the early statutes, which provided that if any clerk or servant shall, by virtue of such employment, receive or take into his possession any chattel, money or valuable security, for, or in the name, or on the account of his master, etc. These statutes were construed to mean that the property must be received from a third person. (2 Bishop, Criminal Law, 9th ed., sec. 365.) The decision in the case of *Territory v. Maxwell,* 2 N. M. 250, discusses the historical development of the rule contended for by appellant, and shows that it is inapplicable under a statute practically identical with our own, citing to the same effect, *People v. Dalton,* 15 Wend. (N. Y.) 581; *Lowenthal v. State,* 32 Ala. 589. It is held there that the statute contains no limitation as to the manner of the property coming into the agent's possession or under his control, or the person from whom it may come. Appellant cites, in support of his position, the quite recent case of *State v. Mathews,* 143 Tenn. 463, 13 A. L. R. 314, 226 S. W. 203, which holds that under such statutes as ours it is necessary, in order that the property be held by the agent by virtue of his employment, it come to him from a third person. The decisions upon which the supreme court of Tennessee rely base their conclusions upon cases decided under the English statutes. It is not necessary to decide to what extent C. S., sec. 8451, and C. S., sec. 8455, overlap each other. The defendant was properly prosecuted under C. S., sec. 8451. (*Ex parte Hedley,* 31 Cal. 108; *People v. Gallagher,* 100 Cal. 466, 35 Pac. 80.)

[3] The third assignment of error argued by appellant is that the witness Thompson, an assistant postmaster, was permitted to read from a book certain entries which purported to be a record of a purchase made by appellant and to be signed by him, thus constituting a purported receipt by defendant for stamped envelopes purchased, it being contended that the book or its contents were not

identified nor admitted in evidence. The witness testified to the manner in which the book was kept, and that it was his own record of orders received for stamped envelopes. Each of the entries read purported to be signed by the defendant, and the witness in each case identified defendant's signature. It was, of course, not necessary that the whole book be offered in evidence, since only these particular entries were desired, and they were properly identified and read in evidence. Counsel argues, aside from his assignment of error in this connection, that these exhibits were not shown to the jury, nor taken by them to the jury-room. He had the right to demand that the jury inspect them, and if they did not go to the jury-room with the other exhibits, attention should have been called to the matter at that time.

[4] It is finally urged that there being no audit of the books of the company, no loss to the company is proven. There is evidence tending to show that in many instances the defendant immediately deposited in his personal checking account the money abstracted from the petty cash fund account, and that he otherwise converted the money to his own use. The evidence is sufficient to warrant the jury in finding that the company lost the money. (20 C. J. 427, note 24; *People v. Mitchell*, 74 Cal. App. 164, 240 Pac. 36.)

The judgment is affirmed.

Wm. E. Lee, C. J., and Budge, Taylor and T. Bailey Lee, JJ., concur.