# TERRITORY OF HAWAII *v.* JOHN A. KEALOHA.

EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

ARGUED APRIL 30, 1914.       DECIDED MAY 13, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

INDICTMENT AND INFORMATION—*grand jury.*

> An indictment is not rendered invalid by reason of the participation in the finding of it of a grand juror who had been instructed by the court to take no part in the deliberations of the jury concerning another and different charge against the accused, as to which the juror had formed an opinion adverse to the accused in the absence of evidence of general bias or prejudice on the part of the juror.

EMBEZZLEMENT—*county employee—evidence of office routine.*

> Where the duties of an officer or employee of a county are not defined by any law or ordinance the prescribed or established practice and routine of the office or department in which he is engaged may be shown in evidence in proof of the allegation that such officer or employee was charged or entrusted with the possession, custody or control of moneys belonging to the county, it

not being necessary that his custody of public money as such
officer or employee should be expressly authorized by statute or
ordinance.

SAME—*ownership of moneys embezzled.*

On the trial of an employee of a county charged with the em-
bezzlement of certain moneys which were the proceeds of a sale
of rock taken from a certain quarry of which the county was in
possession it is immaterial that the county had no title or only a
defective title to the quarry, the defendant claiming no right or
title thereto himself.

SAME—*receipt of money under color of authority—estoppel.*

One who has collected money under color of authority cannot
defend against a prosecution for embezzlement on the ground
that he was not authorized to collect it.

SAME—*proceeds of sale of county property—validity of sale.*

It is no defense to a charge of embezzlement of moneys derived
from a sale of property by a county that the sale was not made in
the manner prescribed by statute.


OPINION OF COURT BY ROBERTSON, C.J.

The defendant was convicted by the verdict of a jury upon
an indictment charging him with having committed the offense
of embezzlement, and he now brings to this court a bill of ex-
ceptions claiming that numerous errors were committed dur-
ing the course of the proceedings in the circuit court which
resulted in his conviction.

Exceptions 1 and 2 involve the validity of the indictment
as affected by a certain ruling made in response to a challenge
offered by the defendant to certain grand jurors and to the sus-
taining of a demurrer to a plea in abatement interposed to the
indictment. It appears that upon the impaneling of the grand
jury at the October, 1913, session of the circuit court, the
defendant, who had previously been committed to the grand
jury upon some charge the nature of which was not shown,
challenged five of the grand jurors upon the grounds that they
and each of them had signed certain charges against him in an
impeachment proceeding which had been instituted in this

court, and that they were biased and prejudiced against him. The examination of the jurors showed no general bias or prejudice but the challenges were sustained evidently on the ground that the jurors had formed the opinion that the defendant was guilty of the offenses charged in the impeachment matter. The court instructed the five jurors referred to to take no part in any proceeding against the accused regarding any of the charges made in the impeachment proceeding, but held that "they are qualified to sit in other cases." It further appears that those jurors took part in the finding of the indictment in this case, also that the charge alleged in this indictment was not one of the charges preferred against the defendant in the impeachment case. The jurors did not violate the instruction given them, but the defendant nevertheless contends that the five jurors in question ought to have been discharged from service entirely, or, at least, should have been precluded from acting in respect of any matter concerning the defendant, and that their participation in the deliberations which brought forth this indictment was sufficient to invalidate it.

The statute (R. L. Sec. 1786, as amended by Act 74, Laws of 1905) permits "any person held to answer a charge for a criminal offense," before the grand jury is sworn, to "challenge the panel, or an individual juror for cause to be assigned to the court," but there is no provision prescribing the action to be taken by the court upon the challenge of a prisoner to an individual juror being sustained. No case in point has been cited. In *U. S.* v. *Jackson,* 102 Fed. 473, the juror was not disqualified under the statute there applicable and the challenge was overruled, but the court of its own motion instructed the juror not to participate in the investigation of the charges pending against the accused. The question here is whether when a grand juror is instructed to take no part in the deliberations of the jury upon a certain charge because he has formed an opinion adverse to the prisoner as to that charge an indictment upon another and different charge will be invalidated by

reason of the participation of the juror. This question was not involved in the challenges made before the grand jury was sworn, having been raised for the first time by the plea in abatement. Whether or not the point was properly and timely raised we need not determine as we feel fully justified in holding that in the absence of evidence of general bias or prejudice on the part of the jurors the mere fact that they had formed and expressed the opinion that the accused was guilty of the offenses of which the defendant was accused in the impeachment case did not disqualify those jurors from taking part in the finding of the indictment in the present case. No error was committed in the sustaining of the demurrer to the plea in abatement.

At the close of the case for the prosecution the defendant rested without adducing any evidence on his own behalf, and moved for a directed verdict of acquittal upon thirty-four grounds which may be summarized under the general statement that the prosecution had failed to prove every material allegation contained in the indictment other than the one that the defendant was a road overseer and an employee of the county of Hawaii. The indictment charged that the defendant, on the 12th day of July, 1911, "being then and there an employee of the County of Hawaii, Territory of Hawaii, to-wit, Road Overseer of the South Hilo District of the said County of Hawaii, Territory of Hawaii, and being then and there by virtue of said employment charged with the duty of collecting and receiving moneys due the said County of Hawaii, Territory of Hawaii, for and on account of goods, wares and merchandise, to-wit, crushed rock, sold by the said County of Hawaii, and being then and there charged by virtue of said employment with the duty of collecting and receiving other moneys on account of the said County of Hawaii, Territory of Hawaii, and he, the said John A. Kealoha, as said Road Overseer, being then and there, by virtue of his said employment, and with the consent and authority of

the said County of Hawaii, entrusted with and having in his possession, control, custody and keeping of a thing of value, to-wit, certain moneys paid to him as said Road Overseer on account of the sale of goods, wares and merchandise, to-wit, crushed rock, to the amount and of the aggregate value of Forty Five and no|100 Dollars ($45.00), a more particular description of which said moneys is to the Grand Jurors unknown, of the moneys and property of the County of Hawaii, Territory of Hawaii, without the consent and against the will of the said County of Hawaii, Territory of Hawaii, the owner thereof and entitled thereto, the said moneys then and there feloniously did embezzle and fraudulently convert and dispose of to his own use and benefit, and did then and there and thereby commit the crime of embezzlement." A demurrer was interposed to the indictment upon several grounds among which was the ground that the indictment was vague, indefinite and uncertain in that it did not allege by whom the crushed rock, the proceeds of which were alleged to have been fraudulently converted by the defendant, was sold. The court held that the indictment averred that the sale was made by the county of Hawaii. The exception to the overruling of the demurrer having been withdrawn, the rulings made by the circuit court upon the demurrer should be taken as settling the law of the case in so far as it was covered by those rulings.

On behalf of the defendant it is contended that no evidence was adduced tending to show that the defendant was charged by virtue of his employment as road overseer with the duty of collecting and receiving moneys due the county for and on account of crushed rock sold by the county. The evidence showed that the defendant was appointed road overseer for the district of South Hilo, county of Hawaii, on the 6th day of January, 1911, but his official duties seem not to have been defined further than will be stated herein. There was evidence tending to show that during a portion, at least, of the year 1911, the county of Hawaii was operating two quarries in

South Hilo; that the defendant was in charge of the quarries in his capacity as road overseer of the district; that some time prior to the 8th day of June, 1911, crushed rock from one or both of those quarries had been sold to various parties by the defendant or by the county through him; that on the said date a resolution was adopted by the board of supervisors of the county authorizing and directing the county auditor "to open accounts with the South Hilo quarry and the South Hilo jail quarry, which shall be maintained as open accounts and are to be credited with all the sales of rock each month and to be charged with the expenses of operating the same;" that thereafter sales of crushed rock continued to be made in the manner above stated; that a considerable portion, at least, of the proceeds of such sales were from time to time paid over to the county treasurer by the defendant with the knowledge and acquiescence of the board of supervisors; that bills were rendered by the defendant to purchasers of such rock upon bills headed "Bought of South Hilo Road Department;" and that receipts for moneys paid by such purchasers were given by the defendant, signed "South Hilo Road Dept. by Jno. A. Kealoha." From this evidence, we hold, the jury could properly have found that the county had made sales of crushed rock and that the defendant was charged by virtue of his employment with the duty of collecting and receiving moneys due the county on account of such sales. Section 2966 of the Revised Laws, as amended by Act 35, Laws of 1911, provides that "If any officer or other person who, by any law, regulation, appointment, or employment, now is or hereafter shall be charged or entrusted, directly or indirectly, with the safekeeping, transfer or disbursement, or otherwise has the possession, control or custody, of any money, note, or other effects or property belonging to the Territory of Hawaii or to any political or municipal corporation or sub-division thereof shall convert the same to his own use or benefit * * * he shall be deemed guilty of embezzlement," etc. Where the duties of an officer or employee

of a county‚ are not defined by any law or ordinance the pre-scribed or established practice and routine of the office or department in which he is engaged respecting the receipt, cus-tody and disposition of moneys may be shown in evidence in proof of the allegation that such officer or employee was charged or entrusted by appointment or employment with the safekeeping, possession or control of moneys belonging to the county, it not being necessary that his custody of public money as such officer or employee should be expressly authorized by statute or ordinance. *Ter.* v. *Wright,* 16 Haw. 123; *Ter.* v. *Richardson,* 16 Haw. 358; *Ter.* v. *Clark,* 20 Haw. 391. See also *State* v. *Silva,* 130 Mo. 440, 460.

It is contended that there was no evidence adduced tending to show that the defendant was entrusted with or had in his possession, control or custody the sum of forty-five dollars, or any sum, paid to him as said road overseer on account of the sale of crushed rock, of the moneys and property of the county, as alleged in the indictment, but that, on the contrary, it was shown that the rock referred to in the evidence was not the property of the county but of the Territory of Hawaii, and that the evidence relied upon by the prosecution as showing a sale of crushed rock, the proceeds of which were appropriated by the defendant, if it showed a sale at all, which is denied, showed a sale made by the defendant personally and not in his capacity as an employee of the county. During the cross-examination of one of the witnesses for the prosecution a document was offered in evidence by the defendant, and, without objection, was re-ceived. The instrument, dated the 9th day of June, 1903, was a release executed by the Waiakea Mill Company, Limited, les-see of the Ahupuaa of Waiakea, Hilo, to the commissioner of public lands, for the use and behoof of the Territory of Hawaii, of its right, title and interest in certain parcels of land at Waia-kea including "5 acres on Waiakea known as the 'Quarry" and lying between the village of Waiakea and the pest-house on the makai side of the road." Much is sought to be made of

this by counsel for the defendant. He argues that this evidence shows that the quarry in question was the property of the Territory and that there was nothing to show that the county had any right or title whatsoever to it, and, hence, no right in or to the rock taken therefrom, or to any moneys obtained from sales of the same. But the fact that the county may have taken possession of the quarry without any authority from the Territory would not entitle the defendant to an acquittal. That as against the Territory the county had no right of possession would not constitute a defense to the charge. Actual possession, as against one claiming no right in himself, is evidence of title, and the evidence which tended to show that the county had been and was in peaceable possession of the quarry furnished support for the allegation that the money received from the sale of rock was the property of the county. It was immaterial that the county had no legal title or only a defective title to the quarry. Wharton's Crim. Law (9th ed.) Secs. 1025, 1038. We believe that the liability of a public officer, in a case of this kind, does not depend on the legal right of the appointing power to receive the moneys or on the legal right of the officer to collect, since the essential elements are the relation of trust and a colorable right to employ, with the acceptance of the relation. 15 Cyc. 503, citing *State* v. *Heath,* 8 Mo. App. 99.

The transaction out of which this charge against the defendant grew, as the jury could have gathered from the evidence, may be briefly stated as follows: That one Maguire, who was the auditor of the county, approached the defendant and, as he testified, "asked him for the purchase of some crushed rock from the county for my place in Puueo;" that the defendant replied "that both the quarries were closed down," but if Maguire "was willing to pay for the labor of operation of the quarry that he (defendant) would get the rock from the Waiakea quarry;" that Maguire agreed to the suggestion, and later paid over to the defendant the money with which to pay the

labor; that the rock was delivered, and Maguire paid therefor the sum of forty-five dollars by check on the First Bank of Hilo, payable to the order of the defendant, the check being dated July 10, 1911, and cashed by the defendant on July 12, 1911; and there was evidence from which it could properly be inferred that the "Waiakea" quarry was one of the quarries mentioned in the resolution of June 8, 1911, above referred to. It further appeared by the testimony of one Field, who, it seems, was investigating the records and accounts of the county, that in the latter part of June or early part of July, 1912, the defendant admitted to Field that there was a shortage in the crushed rock account, that he had mixed the county's money with his own and "forgot to turn it in," and that the forty-five dollars paid to him by Maguire was part of the shortage. This evidence, in connection with that above mentioned, was such as to warrant the jury in finding that the sum of forty-five dollars had been received by the defendant lawfully and by virtue of his employment; that the money was the proceeds of a sale of crushed rock taken from a quarry of which the county was in possession; that the sale was made by the county through the defendant acting in his capacity as road overseer and the person in immediate charge of the quarry; that the money so received was the property of the county within the meaning of the law and the indictment; and that it had been by the defendant converted to his own use. Further, there was evidence tending to show that the defendant had received other moneys from other sales of rock which he had failed to account for, from which, together with the evidence of the admissions made to the witness Field, the jury were warranted in finding that the money received from Maguire had been fraudulently converted.

What has been said disposes of most of the points urged in brief and argument by counsel for the defendant. The numerous exceptions to rulings upon evidence and to instructions given and requests for instructions refused need not be

particularized. The jury were elaborately instructed as to the law and its application to the case, and the instructions were very fair to the defendant. In brief, the jury were told that they should not convict the defendant unless they found from the evidence and beyond a reasonable doubt, that at the time and place alleged in the indictment the defendant was an employee, to wit, a road overseer, of the county of Hawaii; that by virtue of his employment he was charged with the duty of collecting and receiving moneys due the county from sales of crushed rock; that by virtue of his employment and with the consent and authority of the county he was entrusted with and had in his possession, control, custody and keeping certain moneys of the aggregate value of forty-five dollars; that said money was the property of the county of Hawaii; and that without the consent and against the will of the county the defendant did, at or about the time and place alleged, fraudulently convert and dispose of the said money to his own use and benefit; also that unless they found beyond a reasonable doubt that the crushed rock referred to in the indictment was sold by the county they should acquit the defendant; and that if they found from the evidence that the defendant did not embezzle money, though he did embezzle crushed rock, they should acquit him.

An exception was taken to the giving, at the request of the prosecution, of the following instruction: "If you believe from the evidence beyond a reasonable doubt that the defendant sold crushed rock for the county of Hawaii on the representation that as an officer or employee of the county of Hawaii he had authority to sell the same and that the defendant received moneys from such sales on the representation that the receipt thereof was on behalf of the county of Hawaii, and on the representation made by him that in receiving such moneys he was acting as an officer or employee of the county of Hawaii, and on the representation that as such officer he had the right to receive such moneys on behalf of the county of Hawaii, then

you are instructed that the defendant will not be permitted to say in his defense that he had no authority in any of these respects." It is argued that there was no evidence that in the transaction with Maguire the defendant made any such representation, and that the instruction should, therefore, not have been given. But, assuming that the instruction could not be applied to the Maguire transaction for the reason stated, it was not limited to that transaction, and it was applicable to the other transactions, evidence of which was admitted on the question of intent, wherein it appeared that the defendant collected money upon bills which he rendered for rock "bought of the South Hilo road department." It may be said that as the defendant had adduced no affirmative evidence to the effect that in selling the rock and receiving the money he had acted otherwise than for and on behalf of the county and as an employee thereof the instruction was inappropriate, but as the defendant's counsel was contending that the evidence fell short of showing that the defendant had acted in these matters in pursuance of his employment we think the instruction was not inappropriate. It remains to be considered whether the instruction is sound in point of law. We believe it is. The rule often applied in this class of cases is that "One who has collected money under color of authority cannot defend against a prosecution for embezzlement on the ground that he was not authorized to collect it." In *Territory* v. *Clark, supra,* it was found not necessary to invoke the rule, though the court there said of it, "The doctrine of estoppel as thus set forth, when confined to the circumstances of the cases cited commends itself to our judgment." 20 Haw. 398. Besides the cases there cited, *Reynolds* v. *State,* 65 N. J. L. 424, and *People* v. *Sanders,* 139 Mich. 442, may be referred to. The instruction dealt only with representations which the jury could have found to have been made by the defendant with reference to his authority to sell rock on behalf of the county, the capacity in which he received the money for the same, and his right to receive the

money in that capacity. Other questions were covered by other instructions, and the doctrine of estoppel was not made applicable to them. We hold that no error was committed in giving the instruction.

The defendant requested that the jury be instructed that "it was without the authority and beyond the scope of the defendant in this case to make a sale of any of the property, real and personal, of the county of Hawaii," and that "any sale of county property to be valid must have been made by the board of supervisors of the county acting as a board, and that the power of sale given to them by law is a power which could not be delegated by them, therefore I charge you that it is without the power and authority of the board of supervisors to impose upon the defendant as its employee any duty of selling its property." Counsel for the defendant refers to section 9 of the County Act (Act 39, Laws of 1905) to the point that a county has power to manage and dispose of its property as the interests of its inhabitants may require, and that by section 65 of that Act in order "to order the disposal of any property of the county" it is necessary that such order shall receive the approval of a majority of the members of the board of supervisors. The argument is that the board of supervisors was without authority to delegate to an employee of the county the power to effect sales of rock belonging to the county, and that in any event, there could be no valid sale without the formal action of the board either authorizing or ratifying it. We think it was immaterial whether the sale of rock to Maguire, or any of the other sales testified to, were made strictly in accordance with law. In other words, it would be no defense to an indictment for embezzling money derived from any such sale that it was made in a manner not authorized by law. This upon the principle above invoked that it would make no difference so far as this case is concerned that the county's right to the money may have been defective and could be questioned in some other proceeding. The substantial issue in this case, and it was prop-

erly submitted to the jury, was whether the defendant in the course of his employment had fraudulently converted to his own use money received by him on behalf and for the account of the county, and not whether, in the transaction out of which the money came, the board of supervisors had acted in a manner not authorized by law.

What was probably the most important of the instructions given at the request of the prosecution was the following: "If you believe from the evidence beyond a reasonable doubt that the defendant did, on or about the date alleged in the indictment, embezzle and fraudulently convert to his own use and benefit, the sum of forty-five dollars mentioned in the indictment, or any portion thereof, and that the said sum was then and there the property of the county of Hawaii, and was so embezzled and fraudulently converted and disposed of as aforesaid, without the consent and against the will of said county of Hawaii, and if you further believe from the evidence beyond a reasonable doubt that at the time the said money was so embezzled and fraudulently converted and disposed of as aforesaid, said defendant had possession of the same by virtue of his employment as road overseer of the district of South Hilo, county and Territory of Hawaii, then you are instructed to find him guilty." No objection was made or exception taken by the defendant to the giving of that instruction, and under it, as already pointed out, the evidence was sufficient to warrant the jury in finding the defendant guilty.

All the exceptions have been considered and they are overruled.

*L. P. Scott, Deputy Attorney General,* for the prosecution.
*C. H. McBride* for defendant.